UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIEL C. MACRITCHIE | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION NO.  05-11064WGY |
| | ) |
| VEOLIA WATER NORTH AMERICA | ) |
| ENGINEERING & CONSTRUCTION, INC. | ) |
| N/K/A N.A. WATER SYSTEMS, LLC; | ) |
| VEOLIA WATER NORTH AMERICA | ) |
| OPERATING SERVICES, INC.; | ) |
| US FILTER CORPORATION; | ) |
| ANDREW D. SEIDEL; | ) |
| MATTHEW S. THOMPSON; | ) |
| JAMES BROWN; | ) |
| MICHAEL RODI; | ) |
| SCOTT RECINOS; | ) |
| JOHN LUCEY; | ) |
| MICHAEL STARK; and | ) |
| BRIAN J. CLARKE, | ) |
| | ) |
|    Defendants. | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
HIS MOTION FOR PARTIAL SUMMARY
JUDGMENT AGAINST DEFENDANTS, N.A. WATER SYSTEMS, LLC, MICHAEL
RODI, AND SCOTT RECINOS, AS TO COUNT I FOR INTERFERENCE WITH
PLAINTIFF'S RIGHTS UNDER THE FAMILY MEDICAL LEAVE ACT, 29 U.S.C. §
2601**

## INTRODUCTION

Plaintiff, Daniel C. MacRitchie ("Mr. MacRitchie"), was at all relevant times an employee of the Defendant, N.A. Water Systems, LLC ("NAWS) and its predecessors in interest. Defendant, Michael Rodi ("Mr. Rodi"), was the human resources manager for NAWS during the time that Mr. MacRitchie requested four (4) weeks of family medical leave under the Family

1

Medical Leave Act ("FMLA" or "Act") to care for his newborn. Defendant, Scott Recinos ("Mr. Recinos"), was Mr. MacRitchie's supervisor at the time he took his FMLA leave in June 2004.

Mr. MacRitchie seeks entry of summary judgment under Count I of his Complaint (interference with FMLA rights) against: (1) NAWS; (2) Mr. Rodi, and (3) Mr. Recinos. The undisputed evidence shows that Mr. MacRitchie was an eligible employee of NAWS; that he was entitled to leave under the FMLA; that he gave NAWS timely notice of his leave; and that NAWS and Mr. Rodi interfered with his FMLA rights by requiring him to take two (2) weeks leave rather than four (4) weeks as requested. The undisputed evidence also shows that Mr. Recinos required Mr. MacRitchie to work while on FMLA leave.

For the reasons herein, Mr. MacRitchie is entitled to partial summary judgment as to Count I of his Complaint.

## STATEMENT OF FACTS

A. <u>Background - US Filter – the Employer</u>.

In 1999, the Defendant, Veolia Water North America Operating Services, Inc. ("Veolia Water North America"), was owned by the Defendant, United States Filter Corporation, and operated as US Filter Operating Services ("US Filter"). <u>See</u> Exh. A, Printout from Veolia Water North America website; <u>See</u> <u>also</u> Exh. B, Printout from Hoover's Online. At the time, US Filter consisted of three business groups – the services group, the systems group, and the consumer and commercial group. <u>See</u> Exh. C, Rodi Depo. at pp. 19-20. In September 2003, US Filter sold its systems group and its consumer and commercial group. <u>See</u> <u>id</u>. The remaining services group was split into two groups, Veolia Water and Veolia Water Systems North America. <u>See</u> <u>id</u>. at 20. One of Veolia Water Systems North America's business units is the Defendant, N.A. Water Systems, LLC. <u>See</u> <u>id</u>. at 21.

B.  Mr. MacRitchie Accepts Employment with US Filter.

On or about July 27, 2002, Mr. MacRitchie accepted a written offer of employment for a full-time Construction Manager position with US Filter Engineering and Construction. See Exh. D, July 25, 2002 Offer and Acceptance Letter. During Mr. MacRitchie's employment, US Filter Engineering and Construction became Veolia Water North America Engineering and Construction, Inc., which merged with and became known as NAWS in 2004. See Exh. C, Rodi Depo. at p. 23; See also Exh. E, Certificate of Merger. Throughout Mr. MacRitchie's employment, NAWS and its predecessors employed over fifty employees on a daily basis. See MacRitchie Aff. ¶ 7.

C. The Employer Interferes with FMLA Leave After the Birth of a Child.

On September 26, 2003, Mr. MacRitchie's wife gave birth to the couple's third child. See id. at ¶ 8. On or about April 13, 2004, Mr. MacRitchie sent an email to NAWS's Human Resources Administrator, Connie J. Liszewski ("Ms. Liszewski"), requesting leave from June 7, 2004 through July 2, 2004 under the FMLA to care for his newborn child. See Exh. F, April 13, 2004 Email Chain. Other than taking off a single day when his daughter was born, Mr. MacRitchie had not requested other leave to care for his new baby. See MacRitchie Aff. ¶ 9. Furthermore, in the twelve month period prior to his request for leave, Mr. MacRitchie had not requested any time off for any reason under the FMLA. See id. at ¶ 10. After receiving Mr. MacRitchie's emails requesting FMLA leave, Ms. Liszewski discussed Mr. MacRitchie's request for FMLA leave with NAWS's human resources manager, Mr. Rodi. See Exh. C, Rodi Depo. at pp. 18, 21, 66-7, 86.

Ms. Liszewski responded to Mr. MacRitchie's email requesting leave stating that:

3

> You are correct that newborn care falls under the FMLA guidelines. The time you mention is four weeks. If this is correct then I will need the attached papers completed and returned to HR prior to your time off. The physician's statement will indicate the necessity of you being available to care for your child. You are able to use sick time if it is available, otherwise vacation and/or floating holiday may be used or the time can be taken unpaid. If only two weeks are actually needed, the general practice of the Company is to allow new parents to take two weeks off from work using their sick time. See Exh. F, April 13, 2004 Email Chain; See also Exh. K, NAWS Answer to Interrogatory No. 11.

After she advised Mr. MacRitchie, of the "general practice of the Company," Mr. MacRitchie notified Ms. Liszewski that he would only take FMLA leave for two (2) weeks instead of four (4), from June 7, 2004 through June 18, 2004. See Exh. F, April 13, 2004 Email Chain. He timed the leave so as to lessen the impact on his employer and colleagues. See id.

In conformity with the law, Mr. MacRitchie notified his supervisor, Mr. Recinos, identifying the two weeks he would be taking FMLA leave in June 2004. See Exh. G, April 21, 2004 Email Chain; See also Exh. H, Recinos Depo. at p. 9. At all relevant times, Mr. MacRitchie characterized his two weeks off as Family Medical Leave. See MacRitchie Aff. ¶ 13; See also Exh. I, MacRitchie Depo. at pp 156-63. NAWS does not dispute that Mr. MacRitchie was on Family Medical Leave from June 7, 2004 through June 18, 2004. See Exh. C, Rodi Depo. at p. 64. NAWS characterized Mr. MacRitchie's time off as FMLA leave, because Mr. MacRitchie's purpose in taking the time off was to care for a newborn child. See id. at p. 68.

As scheduled, Mr. MacRitchie's FMLA leave commenced on June 7, 2004. See id. at p. 157. On June 9, 2004, Mr. Recinos instructed Mr. MacRitchie to tell NAWS and his colleagues how they could reach Mr. MacRitchie while he was on FMLA leave. See Exh. M, Email dated June 9, 2004 from Mr. Recinos.

4

Mr. Recinos also required Mr. MacRitchie to work during FMLA leave. See MacRitchie Aff. ¶ 14. Mr. MacRitchie was forced to prepare for a meeting scheduled on June 10, 2004, to respond to emails on an ongoing basis regarding matters at the Naugatuck Connecticut project, and to prepare plans in anticipation of a meeting on June 17, 2004. See Exh. N, Six Emails from June 9, 2004 through June 17, 2004. As a result of the demands being made on Mr. MacRitchie, he was forced to work from home during his FMLA leave and to go to the office on more than one occasion. See MacRitchie Aff. ¶ 16. On June 18, 2004, while still on Family Medical Leave, NAWS terminated Mr. MacRitchie. See Exh. I, MacRitchie Depo. at p. 165; See also Exh. C, Rodi Depo. at p. 22.

According to NAWS's human resources manager, Michael Rodi, NAWS considers taking care of a newborn child the same as taking care of someone who is ill under the Act. See id. NAWS's written FMLA policy in its employee handbook differentiates between caring for a newborn child and caring for a child who is seriously ill. See Exh. J, FMLA and Sick Leave Policy; See also Exh. C, Rodi Depo. at pp. 67-68. Neither NAWS's written FMLA policy nor its sick leave policy described in the employee handbook require that time off to care for a newborn be taken as sick time as opposed to leave under the Act. See Exh. J, FMLA and Sick Leave Policy. NAWS in fact admits that requiring Mr. MacRitchie to complete a physician's statement as set out in Ms. Liszewski's response email to Mr. MacRitchie's request for family medical leave was a violation of the Act. See Exh. L, Mr. MacRitchie's First Set of Requests for Admissions to NAWS.[1]

---

[1] Mr. MacRitchie served these admissions on December 9, 2005. As the thirty day period to respond to these admissions has expired, all of the statements contained therein are deemed admitted. See Fed.R.Civ.Pro. Rule 36(a).

5

**ARGUMENT**

I. **MR. MACRITCHIE IS ENTITLED TO PARTIAL SUMMARY JUDGMENT AS TO COUNT I OF HIS COMPLAINT BECAUSE NAWS AND MICHAEL RODI INTEREFERED WITH HIS RIGHT TO TAKE FOUR WEEKS LEAVE UNDER THE FMLA TO CARE FOR HIS NEWBORN**

FMLA was enacted to respond to "the serious problem with the discretionary nature of family leave" that occurs "when the authority to grant leave and to arrange the length of the leave rests with individual supervisors." Xin Liu v. Amway Corp., 347 F.3d 1125, 1134 (9th Cir. 2003) (citation omitted). The FMLA contains two separate types of provisions: (1) those establishing substantive rights, and (2) those providing protection for the exercise of such substantive rights. See Hodgens v. General Dynamics Corp., 144 F.3d 151, 159-60 (1st Cir. 1998).

Substantive rights provided for within the Act under 29 U.S.C. § 2612 create entitlements for employees. Id. at 159 (citation omitted). The substantive right provisions under 29 U.S.C. § 2612(a)(1) entitle an eligible employee to a total of twelve (12) workweeks of leave during any twelve (12) month period due to: (a) the birth of a son or daughter of the employee and in order to care for such son or daughter; (b) the placement of a son or daughter with the employee for adoption or foster care; (c) the need to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition; and (d) a serious health condition that makes the employee unable to perform the functions of the position of such employee.

Claims for violations of substantive rights are brought under 29 U.S.C. § 2615 (a)(1) which prohibits actions by any employer that interferes with, restrains or denies the exercise of such rights. See Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 331 (1st Cir.

2005). Any violation of the FMLA itself or the Department of Labor ("DOL") regulations[2] constitutes interference with an employee's rights under the law. See 29 C.F.R. §825.220(b). Interference has been interpreted by DOL to include not only refusing to authorize FMLA leave but *discouraging* employees from using such leave and mischaracterizing family medical leave. See Xin Liu, 347 F.3d at 1133-35.

To prevail on an interference claim, a plaintiff must establish that: 1) he is an eligible employee; 2) the defendant is an employer; 3) the employee was entitled to leave under the FMLA; 4) the employee gave the employer notice of his intention to take leave; and 5) the employer denied the employee benefits to which he was entitled. Saroli v. Automation & Modular Components, 405 F.3d 446, 451 (6th Cir. 2005). The Plaintiff can satisfy his burden by showing by a preponderance of the evidence that he was entitled to the disputed leave. See Colburn v. Parker Hannifin/Nichols Portland, 429 F.3d 325 (1st Cir. 2005). An employer's good faith or lack of knowledge that its conduct violated FMLA will not relieve it from liability. Bachelder v. America West Airlines, Inc., 259 F.3d 1112, 1130 (9th Cir. 2001). In other words, interference with FMLA rights is a strict liability type tort.

    A. <u>NAWS and Mr. Rodi Forced Mr. MacRitchie to Take Two Weeks Leave When Mr. MacRitchie Sought Four Weeks Leave.</u>

Mr. MacRitchie satisfies each and every element to establish an interference claim against NAWS and Mr. Rodi for violating the FMLA. On the day he requested FMLA leave (April 13, 2004), Mr. MacRitchie was an eligible employee under the Act. He had been employed continuously at NAWS as a construction/project manager for the last year and a half

---

[2] Congress authorized DOL to issue implementing regulations for the FMLA. See 29 U.S.C. § 2654. The DOL regulations provide that the FMLA prohibits interference with an employee's rights under the law. See 29 C.F.R. § 825.220(a).

and was considered a full-time employee. See 29 U.S.C. 2611(2) (must work at least 1250 hours in twelve months prior to requesting leave). In April 2004, NAWS was considered an employer under the FMLA as it had employed well over 50 employees each day for the twenty months prior thereto. See 29 U.S.C. 2611(4).

There is no dispute that Mr. MacRitchie provided ample notice of his leave under the FMLA to NAWS and his supervisors. On April 13, 2004, Mr. MacRitchie notified NAWS through email that he wished to take off from June 7, 2004 through July 2, 2004 under the FMLA. This email provided NAWS with almost sixty (60) days notice. The Act only requires thirty (30) days notice. See 29 U.S.C. 2612(e)(1). Mr. MacRitchie's email also provided NAWS with notice of his purpose in requesting leave under the Act because he specifically stated that it was "to take care of [his] newborn."

Mr. MacRitchie was entitled to take the four (4) weeks off under the Family Medical Leave Act that he had originally requested. From the birth of his third child on September 26, 2003 through April 13, 2004, Mr. MacRitchie had not requested any time off to care for his baby, nor had Mr. MacRitchie requested any time off for any reason under the Act in the twelve months prior to his April 13, 2004 request. As the Act expressly allows an employee to take up to twelve (12) weeks off due to the birth of a child and to care for such child, Mr. MacRitchie had the unfettered right to take at least four (4) weeks of leave to care for his newborn daughter. See 29 U.S.C. § 2612(a)(1)(A).

NAWS does not dispute that Mr. MacRitchie's reason for requesting FMLA leave was covered by the Act as both Ms. Liszewski and Mr. Rodi acknowledged that it was. See Exh. F, April 13, 2004 Email Chain. NAWS therefore concedes that Mr. MacRitchie's request for four (4) weeks off was a substantive right under the Act to which he was entitled.

8

Because this was a substantive right, NAWS was required to provide Mr. MacRitchie with the requested four (4) weeks leave. See Saroli, 405 F.3d at 454 (issue in claim of interference with entitlements under FMLA is simply whether employer provided its employee the entitlements set forth in Act). However, instead of advising Mr. MacRitchie that he was entitled to take up to twelve (12) weeks of leave, NAWS and Mr. Rodi, through his subordinate Ms. Liszewski, discouraged Mr. MacRitchie from taking four (4) weeks off to care for his newborn. NAWS and Mr. Rodi, through his subordinate Ms. Liszewski, suggested that if only two (2) weeks were needed, Mr. MacRitchie could take two weeks off using his sick time as that was NAWS's general policy for new parents. This was a per se violation of the Act. See Xin Liu v. Amway Corporation, 347 F.3d 1125, 1134 (9th Cir. 2003) (employer discouraged employee from taking FMLA when employer interfered with the length and dates of leave); See also Saroli, 405 F.3d at 454 (offering only six weeks instead of twelve discouraged employee from using leave).

In Saroli, a female employee requested maternity leave under the FMLA. See id. at 455. Her employer failed to acknowledge her request for leave, failed to advise her of the fact that she was entitled to take up to twelve (12) weeks under the Act, and instead offered her only six weeks of leave. Id. The Court held that such interference was sufficient to create the necessary interference that discouraged the employee from exercising her rights thereby violating the FMLA. Id. NAWS and Mr. Rodi acted in a manner similar to the employer in Saroli, because NAWS and Mr. Rodi failed to inform Mr. MacRitchie that he could take twelve (12) weeks, and used pressure to limit him to two (2) weeks. NAWS' and Mr. Rodi's conduct was even more egregious than the employer in Saroli: Ms. Liszewski's email claimed it was NAWS's "general practice" to allow new parents to take two (2) weeks off using their sick time. This email

9

demonstrated a per se violation of the FMLA directed at all NAWS employees.

In addition, the alleged policy was not set forth in the employee manual. See Exh. J, FMLA and Sick Leave Policy; See also 29 C.F.R. § 825.301 (if written policy changes, employer needs to provide employee notice of change within two days of receiving employee's notice of need for leave). NAWS' and Mr. Rodi's conduct interfered with Mr. MacRitchie's exercise of his FMLA rights by discouraging him from taking four (4) weeks leave to care for his newborn and trying to recharacterize his request for leave as time that should be taken as two (2) weeks sick time. See Saroli, 405 F.3d at 455; See also Xin Liu, 347 F.3d. at 1135 (mischaracterization of leave constitutes interference). NAWS's interference is the very behavior that the FMLA was designed to protect employees from – abuse by employers. See Xin Liu, 347 F.3d. at 1135 (FMLA is designed to protect employees from having to plead and negotiate with their supervisors to take leave to which they are entitled).

### B. NAWS Unlawfully Required a Medical Certificate.

NAWS and Mr. Rodi, through his subordinate Ms. Liszewski, also had no right to request that Mr. MacRitchie complete a medical certification for his leave. The statute differentiates between caring for a child because she is a newborn and caring for a child because she is seriously ill. See 29 U.S.C. §§ 2613(a) (certification only required where child is seriously ill). Furthermore, despite Mr. Rodi's understanding of the FMLA, NAWS written FMLA policy recognizes the difference between caring for a newborn and caring for a sick child. As Mr. MacRitchie's request expressly stated that he was taking the time off to care for his newborn daughter, a medical authorization was not required. Requesting a medical certification from Mr. MacRitchie was therefore a violation of the FMLA by NAWS and Mr. Rodi. In fact, NAWS

admits that requiring Mr. MacRitchie to complete a physician's statement as set out in Ms. Liszewski's response email to Mr. MacRitchie's request for family medical leave was a violation of the Act. See Exh. L, Mr. MacRitchie's First Set of Requests for Admissions to NAWS.

As an employer is prohibited from taking *any* actions that discourage or interfere with an employee's FMLA rights, NAWS and Mr. Rodi violated Mr. MacRitchie's rights under 29 U.S.C. 2615(a)(1) by discouraging him from taking four weeks off, trying to recharacterize his time off, and requesting a medical certification when one was not required. See Xin Liu, 347 F.3d at 1134 (citation omitted).

## II. MR. MACRITCHIE IS ENTITLED TO PARTIAL SUMMARY JUDGMENT AS TO COUNT I OF HIS COMPLAINT BECAUSE NAWS AND MR. RECINOS INTERFERED WITH MR. MACRITCHIE'S FMLA LEAVE BY REQUIRING HIM TO WORK WHILE ON LEAVE.

NAWS and Scott Recinos interfered with Mr. MacRitchie's rights under the Act by requiring him to work during his leave. Although Mr. MacRitchie was not required to do so, he arranged his leave for a time when it would be the least disruptive to NAWS. See Exh. F, April 13, 2004 Email Chain; See also Sherman v. AI/FOCS, Inc., 113 F.Supp.2d 65, 70 (D.Mass. 2000) (stating convenience to employer is not prerequisite for taking FMLA leave). However, during the two(2) weeks of FMLA leave, Mr. Recinos and NAWS required Mr. MacRitchie to give his contact information so he could be called while on leave and participate in meetings while on leave. See Exh. M, Email dated June 9, 2004 from Mr. Recinos; See also Exh. N, Six Emails from June 9, 2004 through June 17, 2004. While on FMLA leave, Mr. MacRitchie was sent email consistently, and required to participate in meetings and conference calls despite the fact that he was entitled to FMLA leave without interference. See Sherman, 113 F.Supp.2d at 67, 70-71 (requiring employee to answer phone calls and attend meetings while on leave

11

constituted interference under the FMLA).   As an employer is prohibited from taking *any* actions that discourage or interfere with an employee's FMLA rights, NAWS and Mr. Recinos violated Mr. MacRitchie's rights under 29 U.S.C. 2615(a)(1) by requiring him to work while on leave. See Xin Liu, 347 F.3d at 1134 (citation omitted).

## CONCLUSION

As a result of the foregoing reasons, the Plaintiff's Motion for Partial Summary Judgment as to Count I of his Complaint should be allowed. Judgment as to liability against N.A. Water Systems, LLC, Michael Rodi, and Scott Recinos shall enter forthwith.

>The Plaintiff,
>DANIEL C. MACRITCHIE
>By his attorneys
>
>/s/ Jonathan M. Feigenbaum, Esq.
>Jonathan M. Feigenbaum, Esq.
>B.B.O. #546686
>Stephanie M. Swinford, Esq.
>B.B.O. #654135
>Philips & Angley
>One Bowdoin Square
>Boston, MA 02114
>Tel. No. : (617) 367-8787

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing. (NEF), and paper copies will be sent to those indicated as non-registered participants on this 7th day of March, 2006.

>/s/ Jonathan M. Feigenbaum, Esq.

L:\LITG\Dmac002\Sum.Judg\Sum.Judg.Mem.III.doc