UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIEL C. MACRITCHIE | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION NO. 05-11064WGY |
| | ) |
| VEOLIA WATER NORTH AMERICA | ) |
| ENGINEERING & CONSTRUCTION, INC. | ) |
| N/K/A N.A. WATER SYSTEMS, LLC; | ) |
| VEOLIA WATER NORTH AMERICA | ) |
| OPERATING SERVICES, INC.; | ) |
| US FILTER CORPORATION; | ) |
| ANDREW D. SEIDEL; | ) |
| MATTHEW S. THOMPSON; | ) |
| JAMES BROWN; | ) |
| MICHAEL RODI; | ) |
| SCOTT RECINOS; | ) |
| JOHN LUCEY; | ) |
| MICHAEL STARK; and | ) |
| BRIAN J. CLARKE, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S RULE 56.1 STATEMENT OF MATERIAL FACTS IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS, N.A. WATER SYSTEMS, LLC, MICHAEL RODI, AND SCOTT RECINOS, AS TO COUNT I FOR INTERFERENCE WITH PLAINTIFF'S RIGHTS UNDER THE FAMILY MEDICAL LEAVE ACT, 29 U.S.C. § 2601**

NOW COMES the plaintiff and submits the following statement of undisputed facts in accordance with Rule 56.1 of the local rules of the United States District Court for the District of Massachusetts:

1. In 1999, the Defendant, Veolia Water North America Operating Services, Inc. ("Veolia Water North America"), was owned by the Defendant, United States Filter Corporation, and operated as US Filter Operating Services ("US Filter"). See Exh. A, Printout from Veolia Water North America website; See also Exh. B, Printout from Hoover's Online.

2. At the time, US Filter consisted of three business groups – the services group, the systems group, and the consumer and commercial group. See Exh. C, Rodi Depo. at pp. 19-20.

3. In September 2003, US Filter sold its systems group and its consumer and commercial group. See id.

4. The remaining services group was split into two groups, Veolia Water and Veolia Water Systems North America. See id. at 20.

5. One of Veolia Water Systems North America's business units is the Defendant, N.A. Water Systems, LLC ("NAWS"). See id. at 21.

6. On or about July 27, 2002, the Plaintiff, Daniel MacRitchie ("Mr. MacRitchie"), accepted a written offer of employment for a full-time Construction Manager position with US Filter Engineering and Construction. See Exh. D, July 25, 2005 Offer and Acceptance Letter.

7. During Mr. MacRitchie's employment, US Filter Engineering and Construction became Veolia Water North America Engineering and Construction, Inc., which merged with and became known as NAWS in 2004. See Exh. C, Rodi Depo. at p. 23; See also Exh. E, Certificate of Merger.

8. Throughout Mr. MacRitchie's employment, NAWS and its predecessors employed over fifty employees on a daily basis. See MacRitchie Aff. ¶ 7.

9. On September 26, 2003, Mr. MacRitchie's wife gave birth to the couple's third child, Eily Rose. See id. at ¶ 8.

10. On or about April 13, 2004, Mr. MacRitchie sent an email to NAWS's Human Resources Administrator, Connie J. Liszewski ("Ms. Liszewski"), requesting leave from June 7, 2004 through July 2, 2004 under the FMLA to care for his newborn child. See Exh. F, April 13, 2004 Email Chain.

11. Other than taking off a single day when his daughter was born, Mr. MacRitchie had not requested other leave to care for his new baby. See MacRitchie Aff. ¶ 9.

12. Furthermore, in the twelve month period prior to his request for leave, Mr. MacRitchie had not requested any time off for any reason under the FMLA. See id. at ¶ 10.

13. Ms. Liszewski responded to Mr. MacRitchie's email requesting leave stating that

> You are correct that newborn care falls under the FMLA guidelines. The time you mention is four weeks. If this is correct then I will need the attached papers completed and returned to HR prior to your time off. The physician's statement will indicate the necessity of you being available to care for your child. You are able to use sick time if it is available, otherwise vacation and/or floating holiday may be used or the time can be taken unpaid. If only two weeks are actually needed, the general practice of the Company is to allow new parents to take two weeks off from work using their sick time. See Exh. F, April 13, 2004 Email Chain; See also Exh. K, NAWS Answer to Interrogatory No. 11.

14. Mr. MacRitchie notified Ms. Liszewski that he would take FMLA leave from June 7, 2004 through June 18, 2004. See Exh. F, April 13, 2004 Email Chain.

15. That leave was planned so as not to interfere with the project Mr. MacRitchie was working on. See id.

16. Sometime after receiving Mr. MacRitchie's emails requesting FMLA leave, Ms. Liszewski discussed Mr. MacRitchie's request for leave with NAWS's human resources manager, Michael Rodi ("Mr. Rodi"). See Exh. C, Rodi Depo. at pp. 18, 21, 66-7, 86.

17. In conformity with the law, Mr. MacRitchie notified his supervisor, Scott Recinos ("Mr. Recinos"), identifying the two weeks he would be taking FMLA leave in June 2004. See Exh. G, April 21, 2004 Email Chain; See also Exh. H, Recinos Depo. at p. 9.

18. At all relevant times, Mr. MacRitchie characterized his two weeks off as Family Medical Leave. See MacRitchie Aff. ¶ 13; See also Exh. I, MacRitchie Depo. at pp 156-63.

19. NAWS does not dispute that Mr. MacRitchie was on Family Medical Leave from June 7, 2004 through June 18, 2004. See Exh. C, Rodi Depo. at p. 64.

20. NAWS characterized Mr. MacRitchie's time off as family medical leave because Mr. MacRitchie's purpose in taking the time off was to care for a newborn child. See id. at p. 68.

21. As scheduled, Mr. MacRitchie's FMLA leave commenced on June 7, 2004. See id. at p. 157.

22. On June 9, 2004, Mr. Recinos instructed Mr. MacRitchie to tell NAWS and his team how they could reach him while he was on FMLA leave. See Exh. M, Email dated June 9, 2004 from Mr. Recinos.

23. Mr. Recinos also required Mr. MacRitchie to work during FMLA leave. See MacRitchie Aff. ¶ 14.

24. Mr. MacRitchie was forced to prepare for a meeting scheduled on June 10, 2004, to respond to emails on an ongoing basis regarding matters at the Naugatuck Connecticut

project, and to prepare plans in anticipation of a meeting on June 17, 2004. <u>See</u> Exh. N, Six Emails from June 9, 2004 through June 17, 2004.

25. As a result of the demands being made on Mr. MacRitchie, he was forced to work from home during his FMLA leave and to go to the office on more than one occasion. <u>See</u> MacRitchie Aff. ¶ 16.

26. On June 18, 2004, while still on Family Medical Leave, NAWS terminated Mr. MacRitchie. <u>See</u> Exh. I, MacRitchie Depo. at p. 165; <u>See also</u> Exh. C, Rodi Depo. at p. 22.

27. According to NAWS's human resources manager, Michael Rodi, NAWS considers taking care of a newborn child the same as taking care of someone who is ill under the Act. <u>See id</u>.

28. NAWS's written FMLA policy in its employee handbook differentiates between caring for a newborn child and caring for a child who is seriously ill. <u>See</u> Exh. J, FMLA and Sick Leave Policy; <u>See also</u> Exh. C, Rodi Depo. at pp. 67-68.

29. Neither NAWS's written FMLA policy nor its sick leave policy described in the employee handbook require that time off to care for a newborn be taken as sick time as opposed to leave under the Act. <u>See</u> Exh. J, FMLA and Sick Leave Policy.

30. NAWS in fact admits that requiring Mr. MacRitchie to complete a physician's statement as set out in Ms. Liszewski's response email to Mr. MacRitchie's request for family medical leave was a violation of the Act. <u>See</u> Exh. L, Mr. MacRitchie's First Set of Requests for Admissions to NAWS.[1]

---

[1] Mr. MacRitchie served these admissions on December 9, 2005. As the thirty day period to respond to these admissions has expired, all of the statements contained therein are deemed admitted. <u>See</u> Fed.R.Civ.Pro. Rule 36(a).

        The Plaintiff,
        DANIEL C. MACRITCHIE
        By his attorneys


        /s/ Jonathan M. Feigenbaum, Esq.
        Jonathan M. Feigenbaum, Esq.
        B.B.O. #546686
        Stephanie M. Swinford, Esq.
        B.B.O. #654135
        Philips & Angley
        One Bowdoin Square
        Boston, MA 02114
        Tel. No. : (617) 367-8787


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing. (NEF), and paper copies will be sent to those indicated as non-registered participants on this 7th day of March, 2006.

        /s/ Jonathan M. Feigenbaum, Esq.
        Jonathan M. Feigenbaum, Esq.


L:\LITG\Dmac002\Sum.Judg\statement.rule56.III.doc