UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DANIEL C. MACRITCHIE | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION NO.  05-11064WGY |
| | ) | |
| VEOLIA WATER NORTH AMERICA | ) | |
| ENGINEERING & CONSTRUCTION, INC. | ) | |
| N/K/A N.A. WATER SYSTEMS, LLC; | ) | |
| VEOLIA WATER NORTH AMERICA | ) | |
| OPERATING SERVICES, INC.; | ) | |
| US FILTER CORPORATION; | ) | |
| ANDREW D. SEIDEL; | ) | |
| MATTHEW S. THOMPSON; | ) | |
| JAMES BROWN; | ) | |
| MICHAEL RODI; | ) | |
| SCOTT RECINOS; | ) | |
| JOHN LUCEY; | ) | |
| MICHAEL STARK; and | ) | |
| BRIAN J. CLARKE, | ) | |
| | ) | |
|     Defendants. | ) | |
| _____ | ) | |

**<u>PLAINTIFF'S EXHIBITS IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY
JUDGMENT AGAINST DEFENDANTS, N.A. WATER SYSTEMS, LLC,
MICHAEL RODI, AND SCOTT RECINOS, AS TO COUNT I
FOR INTERFERENCE WITH PLAINTIFF'S RIGHTS UNDER
THE FAMILY MEDICAL LEAVE ACT, 29 U.S.C. § 2601</u>**

| **EXHIBIT** | **DESCRIPTION** |
|---|---|
| A | Company History Printout from Veolia Water North America's website |
| B | Company History Printout from Hoover's Online |
| C | Relevant Portions of Deposition of Michael Frederick Rodi conducted on January 26, 2006 |
| D | Mr. MacRitchie's Offer and Acceptance Letter with US Filter Engineering and Construction dated July 25, 2005 |
| E | Certificate of Merger for N.A. Water Systems, LLC |
| F | April 13, 2004 Email Chain regarding Mr. MacRitchie's notice to N.A. Water Systems, LLC requesting time off under the Family Medical Leave Act |
| G | April 21, 2004 Email Chain regarding Mr. MacRitchie's notice of his leave to his supervisor |
| H | Relevant Portions of Deposition of Scott Recinos conducted on January 17, 2006 |
| I | Relevant Portions of Deposition of Daniel C. MacRitchie conducted on December 19, 2005 |
| J | N.A. Water Systems, LLC Family Medical Leave and Sick Leave Policy |
| K | N.A. Water Systems, LLC's Answer to Interrogatory No. 11 |

L          Relevant Portions of Mr. MacRitchie's First Set of Requests for

           Admissions to N.A. Water Systems, LLC

M          Email dated June 9, 2004 from Mr. Recinos

N          Six Emails from June 9, 2004 through June 17, 2004


                              The Plaintiff,
                              DANIEL C. MACRITCHIE
                              By his attorneys


                              /s/ Stephanie M. Swinford, Esq.
                              Jonathan M. Feigenbaum, Esq.
                              B.B.O. #546686
                              Stephanie M. Swinford, Esq.
                              B.B.O. #654135
                              Philips & Angley
                              One Bowdoin Square
                              Boston, MA 02114
                              Tel. No. : (617) 367-8787


                    <u>CERTIFICATE OF SERVICE</u>

        I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing.

(NEF), and paper copies will be sent to those indicated as non-registered participants on this 7th

day of March, 2006.


                              /s/ Stephanie M. Swinford, Esq.
                              Stephanie M. Swinford, Esq.


L:\LITG\Dmac002\Sum.Judg\Sum.Judg.Exh.III.doc

# EXHIBIT "A"



**WATER**

## ABOUT US

### OUR HISTORY

Our company holds the first industrial water outsourcing agreement (Bethlehem Steel in 1950) and the first municipal public-private partnership for wastewater services (Burlingame, Calif., in 1972). In 1999, the company was owned by United States Filter Corporation and operated as USFilter Operating Services when it was acquired by Veolia Environment (known as Vivendi at that time.) Today, Veolia Environment is the world's largest environmental company, and globally, Veolia Water is the No. 1 provider of water services, serving more than 80 million people.



© 2004 Veolia Water North America

EXHIBIT "B"



IPO Central        Hoover's Books

My Hoover's –
Keeping Track So
You Don't Have To

Customize your Hoover's experien
save time performing frequent tas
Learn More.

Thursday, April 21, 2005            Home    About Hoover's    Subscription Options    Help    My Ho

Company Name

Search

Browse Directories »

Subscribe Now

Call 866-619-3096

Browse Company Record

▸ Fact Sheet

People

Competitors

News

Financials

Profile View

Pro Premium Tools

Family Tree Viewer

Build Company List
(D&B In-Depth)

Pro Plus Tools

Build Company List
(D&B Basic)

Build Company List
(D&B International)

Pro Tools

Find Similar Companies

Build Company List
(Hoover's In-Depth)

Build Executive List

Custom News Search

Target IPO Companies

StockScreener

Tools

Search For Reports

Download to PDA

Mobile Access

# Veolia Water North America Operating Services,

14950 Heathrow Forest Parkway, Ste.     Phone: 281-449-1500
200                                      Fax: 281-449-5970
Houston, TX 77032 (Map)                  Toll Free: 800-522-4774

http://www.veoliawaterna.com ↪

HOOV
THE (
YOU I

*Covered by Randy Williams*

Coming up from the ground and into your
house, Veolia Water North America
Operating Services (formerly USFilter
Operating Services) designs, builds, and
operates water and wastewater systems
throughout the US. Its facilities serve 14
million people in about 600 communities.
Veolia Water North America typically
operates through public-private
partnerships, in which a community owns
the water system's physical assets and
sets rates and the company oversees the
system's operations. Veolia Water North
America, formerly part of the USFilter unit
of Veolia Environnement, changed its name in 2004 as part of a rebranding initiati
Environnement.



Hoover's provides the
resources to help you:

✓ Get advice from other
  Small Business owners

Visit today to see
what's new!

Ho
Sm
Bu
Ce

Spo

Mas

## Key Numbers

| | |
|---|---|
| Company Type | Subsidiary of Veolia Environnement |
| D&B D-U-N-S Number | Subscribers Only |
| Fiscal Year-End | December |
| 2003 Sales (mil.) | $600.0 |
| 2003 Employees | 3,100 |
| More Financials | |

Scottrade: Low
Online Trading!

## Key People

| | |
|---|---|
| President and CEO | Michael M. Stark |
| SVP and COO | J. Joseph (Joe) Burgess |
| CFO | W. Christopher Chisholm |
| Public Relations | |

Job Op



EXHIBIT "C"

# O'BRIEN & LEVINE

Court Reporting Services



YOUR BOSTON CONNECTION...WORLDWIDE

## Daniel C. MacRitchie v. Veolia Water North America Engineering & Construction, Inc., et al.

Transcript of the Testimony of:

# Michael Frederick Rodi

# January 26, 2006

www.court-reporting.com
mail@court-reporting.com

195 State Street
Boston, MA 02109
(617) 399-0130  888.825.DEPO(3376)

ORIGINAL

Lee Ann Reid  1-18167

1

```
 1              UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS
 2                   - - - - -
      DANIEL C. MACRITCHIE,      )
 3                               )
                  Plaintiff,     )
 4                               )
                     vs.         ) Civil Action
 5                               )
      VEOLIA WATER NORTH         ) No. 05-11064WGY
 6    AMERICA ENGINEERING &      )
      CONSTRUCTION, INC. N/K/A   )
 7    N.A. WATER SYSTEMS, LLC;   )
      VEOLIA WATER NORTH AMERICA)
 8    OPERATING SERVICES, INC.; )
      US FILTER CORPORATION;     )
 9    ANDREW D. SEIDEL; MATTHEW )
      S. THOMPSON; JAMES BROWN; )
10    MICHAEL RODI; SCOTT        )
      RECINOS; JOHN LUCEY;       )
11    MICHAEL STARK; and BRIAN   )
      J. CLARKE,                 )
12                               )
                  Defendants.    )
13                   - - - - -
14         DEPOSITION OF MICHAEL FREDERICK RODI
15    one of the Defendants herein, called by the Plaintiff
16    for examination, taken pursuant to the Federal
17    Rules of Civil Procedure, by and before Lee Ann
18    Reid, a Professional Court Reporter and Notary
19    Public in and for the Commonwealth of
20    Pennsylvania, at the law offices of Jackson Lewis,
21    One PPG Place, 28th Floor, Pittsburgh, Pennsylvania, on
22    Thursday, January 26, 2006, at 10:05 a.m.
23                   - - - - -
      REPRODUCTION OF THIS TRANSCRIPT IS PROHIBITED WITHOUT
24    AUTHORIZATION FROM THE CERTIFYING AGENCY
```

Michael Frederick Rodi 1-26-2006
Daniel C. MacRitchie v. Veolia Water North America Engineering & Construction. Inc., et al.

18

```
 1        A.    Yes.

 2        Q.    Where are you employed?

 3        A.    Veolia Water Systems North America.  Excuse

 4   me.  It is now Veolia Water Solutions & Technology.  It

 5   changed names two weeks ago.

 6        Q.    And the prior name two weeks ago was Veolia

 7   Water Systems North America?

 8        A.    Yes.

 9        Q.    And what is your position within the

10   company?

11        A.    Human resources manager.

12        Q.    How long have you worked at what is now

13   Veolia Water Solutions & Technology and was previously

14   Veolia Water Systems North America?

15        A.    One and-a-half years, almost two years.

16        Q.    So you were hired approximately what date?

17        A.    April of 2004.

18        Q.    Where did you work prior to April of 2004?

19        A.    University of Pittsburgh Medical Center.

20        Q.    What did you do there?

21        A.    Human resources manager.

22        Q.    And how long were you employed at the

23   University of Pittsburgh Medical Center?

24        A.    Four months.
```

Michael Frederick Rodi 1-26-2006
Daniel C. MacRitchie v. Veolia Water North America Engineering & Construction. Inc., et al.

19

```
1           Q.    Why did you leave the position at the

2       Medical Center to go to Veolia Water Systems North

3       America?

4           A.    I worked for US Filter prior to UPMC.   I

5       left US Filter because after the sale of two-thirds of

6       the business I was told my position would no longer

7       exist.  And I -- your question was why did I leave

8       UPMC?

9           Q.    Yes.

10          A.    Because I was asked to return to Veolia

11      which had been formed from what was left over of US

12      Filter.

13          Q.    Can you explain exactly what the corporate

14      structure breakdown was between US Filter becoming

15      Veolia Water?

16          A.    I'll try.

17                MR. PATERNITI:  Objection.  Go ahead.

18          A.    US Filter in September of 2003 was made up

19      of three business groups.  Veolia owned US Filter.

20      Veolia sold two of the three business groups to two

21      different buyers.  The part that remained was then

22      split into two.  And I was asked to come back and be

23      the human resources manager for one of those two

24      groups.
```

Michael Frederick Rodi 1-26-2006
Daniel C. MacRitchie v. Veolia Water North America Engineering & Construction. Inc., et al.

20

```
1         Q.    You said Veolia sold two of the three

2    business groups.  What were the three business groups?

3         A.    The three business groups at the time -- and

4    forgive me.  I do not know their legal names -- were

5    the services group, the systems group and the consumer

6    and commercial group.

7         Q.    And which two of those three were sold?

8         A.    The systems group and the consumer and

9    commercial group.

10        Q.    So is it a correct statement to say that you

11   were asked to be the human resources manager for the

12   services group?

13        A.    The services group was split into two.

14        Q.    I apologize.  What were the two groups that

15   the service group was split into?

16        A.    At the time Veolia Water and Veolia Water

17   Systems.

18        Q.    And which group were you asked to work for?

19        A.    Veolia Water Systems.

20        Q.    When you say Veolia Water Systems is it the

21   same as Veolia Water Systems North America?

22        A.    Correct.

23        Q.    And the other group is Veolia Water.  Is

24   that the complete name?
```

Michael Frederick Rodi 1-26-2006
Daniel C. MacRitchie v. Veolia Water North America Engineering & Construction, Inc., et al.

21

```
 1          A.    I do not know their legal name.

 2          Q.    Okay.  And where is N.A. Water Systems in

 3    relation to this corporate structure?

 4          A.    N.A. Water Systems is one of the Veolia

 5    Water Systems business units.

 6          Q.    Who asked you to leave your position at UPMC

 7    and return to go to work at Veolia Water Systems?

 8          A.    David Ward?

 9          Q.    I'm sorry.  Did you say Ward?

10          A.    Ward.

11          Q.    Which company did he work for?

12          A.    Dave worked for Veolia Water.  Dave

13    recommended me to Veolia Water Systems and contacted me

14    on their behalf.

15          Q.    What is your relationship to N.A. Water

16    Systems?

17          A.    I'm also the human resources manager of N.A.

18    Water Systems.

19          Q.    So you're currently the HR manager for N.A.

20    Water Systems and Veolia Water Solutions & Technology?

21          A.    Correct.

22          Q.    How long have you been the HR manager for

23    N.A. Water Systems?

24          A.    Same time as the overall position.
```

Michael Frederick Rodi 1-26-2006
Daniel C. MacRitchie v. Veolia Water North America Engineering & Construction, Inc., et al.

22

```
 1          Q.    So since approximately April of 2004?

 2          A.    April of 2004, yes.

 3          Q.    Do you know the Plaintiff, Daniel

 4     MacRitchie?

 5          A.    Yes.

 6          Q.    And how do you know the Plaintiff, Daniel

 7     MacRitchie?

 8          A.    He is a former employee of N.A. Water

 9     Systems.

10          Q.    Do you know when Mr. MacRitchie was hired by

11     N.A. Water Systems?

12          A.    Forgive me.  The date escapes me.  I believe

13     it was in 2001.

14                    MR. PATERNITI:  Oh.  I need to insert

15     an objection.  I'm sorry for being a little late.

16                    MS. SWINFORD:  I'm sorry.  Can you just

17     repeat the question.

18                    (Question and answer read back.)

19          Q.    And when was Mr. MacRitchie terminated from

20     N.A. Water Systems?

21          A.    In June of 2004.

22          Q.    If I were to tell you the date was June 18,

23     2004, does that sound accurate?

24          A.    Yes, it does.
```

Michael Frederick Rodi 1-26-2006
Daniel C. MacRitchie v. Veolia Water North America Engineering & Construction, Inc., et al.

23

```
1        Q.    So from Mr. MacRitchie's hire date in 2001

2    until June 18 of 2004 he was employed by N.A. Water

3    Systems, LLC; is that correct?

4        A.    Correct.

5                   MR. PATERNITI:  You said from what date

6    to what date?

7                   MS. SWINFORD:  From when Mr. MacRitchie

8    was hired in 2001 until June 18, 2004.

9                   MR. PATERNITI:  Okay.  Go ahead and

10   answer.  It's confusing, but go ahead.

11       A.    It is confusing because of how I explained

12   the changes in ownership.

13       Q.    Could you breakdown who Mr. MacRitchie's

14   employers were?

15       A.    Hired as US Filter Engineering &

16   Construction, which then became Veolia Water

17   Engineering & Construction, which then became N.A.

18   Water Systems.

19                  MR. PATERNITI:  Yes.  And the only

20   reason I wanted to make sure that it was clear to you

21   is that the answers that you've gotten in the

22   Interrogatory Answer and some of Mike's answers, these

23   folks oftentimes will refer to NAWS or answer questions

24   when you say was he employed by NAWS, but they're
```

Michael Frederick Rodi 1-26-2006
Daniel C. MacRitchie v. Veolia Water North America Engineering & Construction, Inc., et al.

64

```
 1          Q.    Did you know that Dan had appeared at this

 2     meeting when you received this E-mail on September 24,

 3     2004?

 4          A.    I don't remember that lineage, if I found

 5     out before or after this.

 6          Q.    You testified that Dan took two weeks off in

 7     June which you understood to be sick time; is that

 8     correct?

 9          A.    Yes.

10          Q.    And that time off was from June 7, 2004

11     through June 18, 2004; correct?

12          A.    Correct.

13          Q.    How did N.A. Water Systems characterize the

14     two weeks off that Mr. MacRitchie took?  I'm asking you

15     this as a 30(b)(6) deponent?

16          A.    We characterize them as family medical leave

17     time but also to be paid with sick time.

18          Q.    And I apologize if I already asked you this

19     and you answered it, but at any time in 2004 did

20     Mr. MacRitchie tell you that he intended to take family

21     medical leave sometime during that year?

22          A.    No, not to me.

23          Q.    As a 30(b)(6) deponent I'm asking you did

24     Dan ever request any time off from N.A. Water Systems
```

Michael Frederick Rodi 1-26-2006
Daniel C. MacRitchie v. Veolia Water North America Engineering & Construction, Inc., et al.

66

```
 1          A.    It does, April, yes.

 2          Q.    Did you see these E-mails in April?

 3          A.    I did not.

 4          Q.    When did you see these E-mails?

 5          A.    I saw these E-mails after, post termination.

 6          Q.    And what caused you to see these E-mails

 7     post termination?

 8          A.    Quite honestly I believe if my memory serves

 9     it was after the lawsuit had been filed and I was --

10                    MR. PATERNITI:  Don't answer any

11     questions if it has to do with communications between

12     counsel.

13          Q.    That's sufficient.

14          A.    Sorry.

15          Q.    Prior to this lawsuit was it your

16     understanding that the two weeks off Mr. MacRitchie had

17     were sick time?

18                    MR. PATERNITI:  Objection.

19          A.    Yes.

20          Q.    Prior to this lawsuit were you aware that

21     Mr. MacRitchie had requested time off under the Family

22     Medical Leave Act?

23                    MR. PATERNITI:  Objection.

24          A.    You said prior to this lawsuit?
```

Michael Frederick Rodi 1-26-2006
Daniel C. MacRitchie v. Veolia Water North America Engineering & Construction, Inc., et al.

67

```
 1          Q.    Correct.

 2          A.    Yes.

 3          Q.    How were you aware of that?

 4          A.    I believe Connie had told me.

 5          Q.    Do you believe Connie told you after she

 6     received these E-mails from Dan MacRitchie?

 7          A.    I'm sure, yes.

 8          Q.    Was any paperwork processed as far as Dan's

 9     request for time off under the Family Medical Leave

10     Act?

11          A.    There was no paperwork processed to my

12     knowledge.  Could you define processed?

13          Q.    Well, let me rephrase the question I guess.

14     Prior to June 7, 2004 what was N.A. Water Systems'

15     policy regarding an employee's request to take time off

16     on a Family Medical Leave Act?  And I'm asking you as a

17     30(b)(6) deponent.

18          A.    Okay.  Notification of 30 days before if

19     possible, and then if the process had to do with

20     someone being sick was to give what we call the

21     Department of Labor form which we use as our form to

22     prove that someone is indeed sick.  And we also issue

23     FMLA paperwork.

24          Q.    Can you specify when you say FMLA paperwork?
```

Michael Frederick Rodi 1-26-2006
Daniel C. MacRitchie v. Veolia Water North America Engineering & Construction, Inc., et al.

68

```
 1          A.      We send someone a copy of the FMLA policy.

 2          Q.      And this is a written policy --

 3          A.      Yes.

 4          Q.      -- that N.A. Water Systems has?  And where

 5     could this written policy be found?

 6          A.      In the employee handbook.

 7          Q.      You testified a moment ago that N.A. Water

 8     Systems characterized Dan's two weeks off as family

 9     medical leave time but also to be paid with sick time?

10          A.      Correct.

11          Q.      How do you know that it was characterized as

12     family medical leave time?

13          A.      Because of its nature.

14          Q.      Can you elaborate on what you mean?

15          A.      Care of a child.

16          Q.      Is taking care of a child considered the

17     same as caring for someone who is sick under the Family

18     Medical Leave Act?

19          A.      Yes.  Same category.

20          Q.      How do you know that?

21          A.      It's the FMLA law.

22          Q.      Are you aware of any conversations between

23     Mr. MacRitchie and anyone at N.A. Water Systems

24     regarding his request for time off under the Family
```

Michael Frederick Rodi 1-26-2006
Daniel C. MacRitchie v. Veolia Water North America Engineering & Construction, Inc., et al.

86

```
 1        Q.    You stated before that you're Connie's boss?

 2        A.    Correct.

 3        Q.    Those E-mails that Dan MacRitchie had sent

 4   requesting time off under the Family Medical Leave Act

 5   were sent to Connie; is that correct?

 6        A.    Yes.

 7        Q.    Is there a reason that Dan would have sent

 8   them to Connie as opposed to sending them to you?

 9        A.    I would say probably because I was new and

10   he may not have known exactly who to send it to and

11   he -- I honestly don't know.

12        Q.    But Connie did discuss with you those

13   E-mails after she received them?

14        A.    Yes.

15              MS. SWINFORD:  I have no further

16   questions.

17              MR. PATERNITI:  Okay.  I just have a

18   couple of follow-up.  First of all, let's mark this as

19   the next exhibit.

20              (Rodi Exhibit No. 10 was marked for

21   identification.)

22              - - - - -

23              EXAMINATION

24   BY MR. PATERNITI:
```

EXHIBIT "D"

**US**Filter

ENGINEERING & CONSTRUCTION
AIRPORT BUSINESS PARK
250 AIRSIDE DRIVE
MOON TOWNSHIP, PA 15108

TELEPHONE  412-809-6000
FACSIMILE  412-809-6063

July 25, 2002

*Received*
*AUG - 2 2002*
*CHESTER*
*HUMAN RESOURCES*

Mr. Daniel C. MacRitchie
7 Hillside Avenue
Exeter, NH 03833

Dear Dan:

I am pleased to confirm our offer to you for the full time regular exempt position of Construction Manager with USFilter Services Group – Engineering & Construction, effective August 1, 2002 and reporting to David Ford. This offer is contingent on acceptance by the Lynn Water and Sewer Commission Executive Director.

Your salary will be based on $90,000 annually, subject to regular payroll withholdings and deductions; and you will be eligible to participate in USFilter benefits, as available to similarly-situated employees, based on applicable service, terms and conditions. After your completion of one (1) year of service, you will be eligible for an annual performance evaluation and merit increase, subject to management discretion.

For certain projects you are assigned, Project Incentive Plans (PIP) will be established. Upon starting employment, we will pay you $4,500 in advance for this PIP bonus. Payment will be made through the normal payroll cycle.

The terms and conditions of your employment are further detailed in the USFilter Employee Handbook, which includes your obligation to honor the terms of our Confidentiality and Development Agreement. Before accepting our offer, we will make copies available to you upon your request. We are an at-will employer. You and the Company have the mutual right to end our employment relationship at any time, with or without cause.

Your employment is contingent upon the completion of an I-9 Employment Eligibility Verification and a negative result from a drug-screening test. You are required to complete the drug-screening test within five business days of the date of this letter. Instructions, a Chain of Custody Form, and a FedEx label are attached.

Finally, we understand that you are not a party to any agreement or contract that would in any way restrict or prohibit you from undertaking or performing your job duties with us. Moreover, you agree that you will fully comply with the terms and conditions of any applicable non-disclosure agreement with your current or former employer and that you will not disclose to us any confidential or proprietary information of your current or former employer.



July 25, 2002
Page 2

This letter supersedes any and all prior statements, representations and promises regarding your employment. It may be modified only in writing and signed by you and an authorized representative of the Human Resources Department.

Two copies of this letter are enclosed. Please sign, date and return one copy to me in the enclosed stamped, self-addressed envelope, and retain the other copy for your records.

I am sure that you will find this position both challenging and rewarding. On behalf of USFilter Engineering & Construction, we look forward to you becoming a member of our team. If I can be of assistance to you, please feel free to contact me at 412-809-6062.

Sincerely,

Brian A. Hasson
Manager, Human Resources
USFilter Engineering and Construction

cc:    J.B. Noroski
       D.W. Ford
       A.J. Pociask


I agree to accept at-will employment from USFilter Engineering & Construction (Chester Engineers, Inc.), upon the terms and subject to the conditions set forth above.

Daniel C. MacRitchie                 7/27/02
                                     Date

DEF00080

EXHIBIT "E"

DSCB:15-8958

200407 3-1666

# PENNSYLVANIA DEPARTMENT OF STATE
# CORPORATION BUREAU

| Entity Number | Certificate of Merger or Consolidation<br>Limited Liability Company<br>(15 Pa. C.S. § 8958) |
| --- | --- |

323 65 43

| Name | Document will be returned to the name and address you enter to the left. ⇐ |
| --- | --- |
| Frank E. Dietrick, Jr., Duane Morris, LLP | |
| Address | |
| 305 North Front Street, 5ᵗʰ Floor, PO Box 1003 | |

| City | State | | Zip Code |
| --- | --- | --- | --- |
| Harrisburg | PA | | 17108-1003 |

Fee:

Filed in the Department of State on: ᴊᴜᴸ 1 2004

Secretary of the Commonwealth

In compliance with the requirements of the 15 Pa.C.S. § 8958 (relating to articles of merger or consolidation), the undersigned limited liability company(s), desiring to effect a merger or consolidation, hereby state that:

1. The name of the limited liability company surviving the merger or consolidation is:

   N.A. Water Systems, LLC

2. *Check one of the following:*

   ☒ The surviving limited liability company is a domestic limited liability company and the (a) address of its current registered office in this Commonwealth or (b) name of its commercial registered office provider and the county of venue is (the Department is hereby authorized to correct the following information to conform to the records of the Department):

   | (a) Number and Street | City | State | Zip | County |
   | --- | --- | --- | --- | --- |
   | | | | | |

   | (b) Name of Commercial Registered Office Provider | | County |
   | --- | --- | --- |
   | c/o: CT Corporation System | | Philadelphia |

   ☐ The surviving limited liability company is a qualified foreign limited liability company formed under the laws of _____ and the (a) address of its current registered office in this Commonwealth or (b) name of its commercial registered office provider and the county of venue is (the Department is hereby authorized to correct the following information to conform to the records of the Department):

   | (a) Number and Street | City | State | Zip | County |
   | --- | --- | --- | --- | --- |
   | | | | | |

   | (b) Name of Commercial Registered Office Provider | County |
   | --- | --- |
   | c/o: | |

PHM 191249.1

200407 3·1667

DSCB:15-895B

> ☐  The surviving limited liability company is a nonqualified foreign limited liability company formed under the laws of _____ and the address of its principal office under the laws of such domiciliary jurisdiction is:
>
> | Number and Street | City | State | Zip |

3. The name and the address of the current registered office in this Commonwealth or name of its commercial registered office provider and the county of venue of each other domestic business corporation which is a party to the plan of merger or consolidation are as follows:

| Name | Registered Office Address | Commercial Registered Office Provider | County |
| --- | --- | --- | --- |
| Veolia Water North America Engineering & Construction, Inc. – CT Corporation | System | | Philadelphia |

4. *Check, and if appropriate complete one of the following:*

☒  The plan of merger or consolidation shall be effective upon filing these Articles of Merger in the Department of State.

☐  The plan of merger or consolidation shall be effective on:

5. The manner in which the plan of merger or consolidation was adopted by each domestic limited liability company and domestic business corporation is as follows:

Name of Limited Liability Company                     Manner of Adoption

N.A. Water Systems, LLC – Adopted by the Sole Member and Managers pursuant to 15 Pa. C.S. Sec. 8957(g)

Name of Corporation                                  Manner of Adoption

Veolia Water North America Engineering & Construction, Inc. – Adopted by the Sole Shareholder and Directors pursuant to 15 Pa. C.S. Sec. 1924(a)

6.  Strike out this paragraph if no foreign limited liability company is a party to the merger or consolidation

~~The plan was authorized, adopted or approved, as the case may be, by the foreign limited liability company (or each of the foreign limited liability companies) party to the plan in accordance with the laws of the jurisdiction in which it is organized.~~

DSCB:15-8958

200407  1668

7. Check, and if appropriate complete, one of the following:

☒ The plan of merger or consolidation is set forth in full in Exhibit A attached hereto and made a part hereof.

☐ Pursuant to 15 Pa.C.S. § 8958 (b) (relating to omission of certain provisions of plan of merger or consolidation) the provisions, if any, of the plan of merger or consolidation that amend or constitute the operative Certificate of Organization of the surviving limited liability company as in effect subsequent to the effective date of the plan are set forth in full in Exhibit A attached hereto and made a part hereof. The full text of the plan of merger or consolidation is on file at the principal place of business of the surviving limited liability company, that address of which is:

| Number and street | City | State | Zip | County |
|---|---|---|---|---|
| | | | | |

IN TESTIMONY WHEREOF, the undersigned has caused this Certificate of Merger or Consolidation to be signed by a duly authorized officer or manager thereof this 16th day of July , 2004.

Veolia Water North America Engineering & Construction, Inc.
_____
Name of Corporation

Brian J. Clarke  Signature
_____

Vice President
_____
Title

N.A. Water Systems, LLC
_____
Name of Limited Liability Company

_____
Signature

_____
Manager

DSCB:15-8958

200407 3 1669

7. Check, and if appropriate complete, one of the following:

☒ The plan of merger or consolidation is set forth in full in Exhibit A attached hereto and made a part hereof.

☐ Pursuant to 15 Pa.C.S. §8958 (b) (relating to omission of certain provisions of plan of merger or consolidation) the provisions, if any, of the plan of merger or consolidation that amend or constitute the operative Certificate of Organization of the surviving limited liability company as in effect subsequent to the effective date of the plan are set forth in full in Exhibit A attached hereto and made a part hereof. The full text of the plan of merger or consolidation is on file at the principal place of business of the surviving limited liability company, that address of which is:

| Number and street | City | State | Zip | County |
|---|---|---|---|---|
| | | | | |

IN TESTIMONY WHEREOF, the undersigned has caused this Certificate of Merger or Consolidation to be signed by a duly authorized officer or manager thereof this 16th day of July , 2004.

Veolia Water North America Engineering & Construction, Inc.

_____
Name of Corporation

_____
Signature

_____
Title

N.A. Water Systems, LLC
_____
Name of Limited Liability Company

_____
Brian J. Clarke,   Signature
Manager

_____
Manager

PHDM1913249.1

200407 3·1870

EXHIBIT A

## AGREEMENT AND PLAN OF MERGER

### OF

## VEOLIA WATER NORTH AMERICA ENGINEERING & CONSTRUCTION, INC.
(a Pennsylvania corporation)

### WITH AND INTO

## N.A. WATER SYSTEMS, LLC
(a Pennsylvania limited liability company)

This Agreement and Plan of Merger (this "Agreement"), dated as of July 16, 2004 is by and between Veolia Water North America Engineering & Construction, Inc. (the "Parent"), a Pennsylvania corporation, and N.A. Water Systems, LLC (the "Subsidiary"), a Pennsylvania limited liability company.

### BACKGROUND

The Parent is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania, having authorized 10,000,000 shares of common stock, $1.00 par value, of which 4,000,000 shares are issued and outstanding and owned by Veolia Water North America Operating Services, Inc., a Delaware corporation ("VWNAOS").

The Subsidiary is a limited liability company duly organized and existing under the laws of the Commonwealth of Pennsylvania. The sole member of the Subsidiary is the Parent.

The Board of Directors of the Parent and the Board of Managers of the Subsidiary deem it desirable and in the best interests of their respective companies that the Parent be merged with and into the Subsidiary (the "Merger") upon the terms and conditions hereinafter set forth, all in accordance with the applicable provisions of the Pennsylvania Business Corporation Law of 1988 ("PBCL") and the Pennsylvania Limited Liability Company Law of 1994 ("PLLCL").

The Board of Directors and sole shareholder of the Parent and the Board of Managers and sole member of the Subsidiary have approved the Merger.

NOW THEREFORE, in consideration of the foregoing, and in further consideration of the promises and mutual covenants and agreements herein set forth, the parties hereto, intending to be legally bound hereby, covenant and agree as follows:

200407 3·1671

1.    The Merger.  At the Effective Time (as defined in Section 2) and subject to and upon the terms and conditions of this Agreement, the PBCL and the PLLCL, the Parent shall be merged with and into the Subsidiary, the separate corporate existence of the Parent shall cease and the Subsidiary shall continue as the surviving company.  The Subsidiary as the surviving company after the Merger is sometimes hereinafter referred to as the "Surviving Company."

2.    Effective Time.  The Merger shall be effective upon the filing of the Articles of Merger with the Pennsylvania Department of State (the "Effective Time").

3.    Effect of the Merger.

3.1    The Merger shall have the effects set forth in Section 1929 of the PBCL and Section 8959 of the PLLCL.  Without limiting the generality of the foregoing, and subject thereto, at the Effective Time all the property, rights, privileges, powers and franchises of the Parent shall vest in the Surviving Company, and all debts, liabilities and duties of the Parent shall become the debts, liabilities and duties of the Surviving Company.

3.2    From time to time, as and when required by the Surviving Company or by its successors or assigns, there shall be executed and delivered on behalf of the Parent such deeds and other instruments, and there shall be taken or caused to be taken by it such further and other actions as shall be appropriate or necessary in order to vest or perfect in or confirm of record or otherwise by the Surviving Company the title to and possession of all of the property, rights, privileges, powers and franchises of the Parent and otherwise to carry out the purposes of this Agreement, and the managers of the Surviving Company are fully authorized in the name and on behalf of the Parent or otherwise to take any and all such action and to execute and deliver any and all such deeds and other instruments.

4.    Certificate of Organization; Operating Agreement; Managers.

4.1    At the Effective Time, the Certificate of Organization of the Subsidiary, as in effect immediately before the Effective Time, shall be the Certificate of Organization of the Surviving Company until thereafter amended as provided by law and such Certificate of Organization.

4.2    The Limited Liability Company Agreement of the Subsidiary, as in effect immediately before the Effective Time, shall be the Limited Liability Company Agreement of the Surviving Company until thereafter amended as provided by law, the Certificate of Organization of the Surviving Company and such Limited Liability Company Agreement.

4.3    The members of the Board of Managers of the Subsidiary immediately before the Effective Time shall be the initial members of the Board of Managers of the Surviving Company, in each case until their successors are duly elected or appointed.  If, at the Effective Time, a vacancy shall exist on the Board of Managers of the Surviving Company, such vacancy may

-2-

200407 3 · 1672

thereafter be filled in the manner provided by law and the Limited Liability Company Agreement of the Surviving Company.

5.    Conversion of Membership Interest.    At the Effective Time, by virtue of the Merger and without any action on the part of the Parent, the Subsidiary or VWNAOS as the holder of all of the outstanding capital stock of the Parent:

5.1    The shares of capital stock of the Parent issued and outstanding immediately before the Effective Time shall by virtue of the Merger automatically be converted into and exchanged for membership interests in the Surviving Company constituting 100% of such membership interests.

5.2    The membership interest of the Parent in the Subsidiary immediately before the Effective Time shall automatically be canceled and extinguished.

6.    Miscellaneous.

6.1    This Agreement may be terminated and the Merger abandoned at any time prior to the Effective Time, by the mutual written consent of the Parent and the Subsidiary.

6.2    This Agreement may be amended by the Board of Directors of the Parent and the Board of Managers of the Subsidiary at any time prior to the Effective Time.

6.3    This Agreement shall be interpreted in accordance with the substantive laws of the Commonwealth of Pennsylvania.

[SIGNATURE PAGE FOLLOWS]

-3-

20040733 1873

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

VEOLIA WATER NORTH AMERICA
ENGINEERING & CONSTRUCTION,
INC.

By: _____
Name: Brian J. Clarke
Title: Vice President

N.A. WATER SYSTEMS, LLC

By: _____
Name:
Title: Manager

PHI\1912142

200407 ) 1674

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

VEOLIA WATER NORTH AMERICA
ENGINEERING & CONSTRUCTION,
INC.

By: _____
    Name:
    Title:


N.A. WATER SYSTEMS, LLC

By: _____
    Name:
    Title:  Manager

PH01191214.2

-4-

200406-8-443

## PENNSYLVANIA DEPARTMENT OF STATE
## CORPORATION BUREAU

Entry Number
32 36543

Certificate of Organization
Domestic Limited Liability Company

(15 Pa.C.S. § 8913)

Name
Frank E. Dietrick, Jr., Duane Morris LLP

Address
305 North Front Street, 5th Floor, PO Box 1003

| City | State | Zip Code |
|------|-------|----------|
| Harrisburg | PA | 17108-1003 |

Document will be returned to the name and address you enter to the left.
⇐

Fee:

Filed in the Department of State on

_Pedro A. Cortes_

Secretary of the Commonwealth

In compliance with the requirements of 15 Pa.C.S. §8913 (relating to certificate of organization), the undersigned desiring to organize a limited liability company, hereby certifies that:

1. The name of the limited liability company (*designator is required, i.e., "company", "limited" or "limited liability company" or abbreviation*):

   N.A. Water Systems, LLC

2. The (a) address of the limited liability company's initial registered office in this Commonwealth or (b) name of its commercial registered office provider and the county of venue is:

   (a) Number and Street          City          State          Zip          County


   (b) Name of Commercial Registered Office Provider          County

   c/o: CT Corporation System          Philadelphia County

3. Name and address, including street and number, if any, of each organizer is (*all organizers must sign on page 2*):

   Name                          Address

   Frank E. Dietrick, Jr.          Duane Morris LLP, One Liberty Place, Philadelphia, PA 19103-7396

PH1:3191054.1

DSCB-15-8913-2                200408 8  444

4. *Strike out if inapplicable term*

A member's interest in the company is to be evidenced by a certificate of membership interest.

5. *Strike out if inapplicable:*

Management of the company is vested in a manager or managers.

6. The specified effective date, if any
   is:

   _____
       month     date     year     hour, if any

7. *Strike out if inapplicable:* The company is a restricted professional company organized to render the following restricted professional service(s):

   _____

   _____

8. For additional provisions of the certificate, if any, attach an 8 1/2 x 11 sheet.

IN TESTIMONY WHEREOF, the organizer(s) has (have) signed this Certificate of Organization this 16th day of July, 2004.

_____
Signature
Frank E. Dietrick, Jr., Organizer

_____
Signature

_____
Signature

EXHIBIT "F"

Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.

-----Original Message-----
| | |
|---|---|
| From: | Liszewski, Connie |
| Sent: | Tuesday, April 20, 2004 12:47 PM |
| To: | MacRitchie, Dan |
| Subject: | RE: Time Off |

Just let your manager know.


Please note new e-mail address.

Connie J. Liszewski
Human Resources Administrator
Veolia Water North America
Airside Business Park
250 Airside Dr.
Moon Township, PA 15108
Phone: 412-809-6064
Fax: 412-809-6063
e-mail: connie.liszewski@veoliawaterna.com
www.veoliawaterna.com



Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.

-----Original Message-----
| | |
|---|---|
| From: | MacRitchie, Dan |
| Sent: | Tuesday, April 20, 2004 12:15 PM |
| To: | Liszewski, Connie |
| Subject: | RE: Time Off |
| Importance: | High |

OK -- I will take the two weeks, June 7 through June 18. I have timed this period to have the least impact on the Naugatuck project. All work, except for start up and acceptance will be finished on May 28, 2004.

thanks,

Dan MacRitchie, P.E.
Operations Manager, Northeast Service Center
Veolia Water North America
Tel. (603) 766-6753
Fax. (603) 766-6751
195 New Hampshire Avenue, Suite 245
Portsmouth, New Hampshire 03801
E-mail: daniel.macritchie@veoliawaterna.com


Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.

-----Original Message-----
From:        Liszewski, Connie
Sent:        Wednesday, April 14, 2004 8:18 AM
To:          MacRitchie, Dan
Subject:     RE: Time Off

You are correct that newborn care falls under the FMLA guidelines. The time you mention is four weeks. If this is correct then I will need the attached papers completed and returned to HR prior to your time off. The physician's statement will indicate the necessity of you being available to care for your child. You are able to use sick time if it is available, otherwise vacation and/or floating holiday may be used or the time can be taken unpaid. If only two weeks are actually needed, the general practice of the Company is to allow new parents to take two weeks off from work using their sick time.

Please let me know which route you would like to take. Any questions let me know. Thanks.............

<< File: Request for Leave of Absence FINAL 040103.doc >> << File: Certificate of Health Care.pdf >>

Please note new e-mail address.

Connie J. Liszewski
Human Resources Administrator
Veolia Water North America
Airside Business Park
250 Airside Dr.
Moon Township, PA 15108
Phone: 412-809-6064
Fax: 412-809-6063
e-mail: connie.l szewski@veoliawaterna.com
www.veoliawaterna.com

Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.

-----Original Message-----
From:         MacRitchie, Dan
Sent:         Tuesday, April 13, 2004 4:01 PM
To:           Liszewski, Connie
Subject:      Time Off
Importance:   High

Connie,

I need to take time off from June 7 through July 2 to take care of my newborn. I understand that FMLA allows for this provided that I give 30-days notice. I also understand that per company policy, I can use accrued sick time for this period. Please let me know if I need to do anything else in the way of paperwork to make this happen.

thanks,

Dan MacRitchie, P.E.
Operations Manager, Northeast Service Center
Veolia Water North America
Tel. (603) 766-6753
Fax. (603) 766-6751
195 New Hampshire Avenue, Suite 245
Portsmouth, New Hampshire 03801
E-mail: daniel macritchie@veoliawaterna.com



## EMPLOYEE REQUEST FOR LEAVE OF ABSENCE

*To be completed by employee making request. Submit to your supervisor for review. Your HR Representative will return a copy of this request to you to confirm the status of your request.*

Employee Name: _____          Employee ID:_____

Date of Request: _____

Home Address: _____

Home Phone Number: _____

Work Location: _____

Work Phone Number: _____

Period of Leave Requested (from/to dates): _____

Last Day of Work: _____

Will Return to Work On:_____

*Purpose of Leave:*

☐ Jury/Witness Duty (Copy of Notice/Summons must be attached)

☐ Military Leave (Copy of orders for military duty must be attached)
    ☐ Temporary        ☐ Extended

☐ Disability Leave of Absence* (attach Certificate of Health Care Provider DOL Form WH-380)
    ☐ Non-occupational        ☐ Occupational

☐ Family and Medical Leave – Other (indicate reason below)
    ☐ Birth/Adoption/Foster Care of Child  ☐ Serious health condition of spouse/child/parent

☐ Personal Leave – state reason: _____

***Family and Medical Leave is concurrent with Non-occupational and Occupational Disability Leave of Absence.***

If appropriate, use the following benefits to supplement pay during my leave of absence:

☐ vacation    ☐ personal floating holiday    ☐ sick time (for FMLA and/or disability leaves of absence only)

Employee Signature: _____    Date: _____

Supervisor Signature:_____    Date: _____

*HR Representative: Return an approved copy to the employee with Disability Leave of Absence Letter.*

☐ Approved    ☐ Not Approved

HR Representative:_____    Date: _____

04/03

Certification of Health Care Provider
(Family and Medical Leave Act of 1993)

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division



| *(When completed, this form goes to the employee, __not to the Department of Labor.__)* | OMB No.: 1215-0181<br>Expires:    07/31/03 |
|---|---|

| 1. Employee's Name | 2. Patient's Name *(If different from employee)* |
|---|---|

3. Page 4 describes what is meant by a "serious health condition" under the Family and Medical Leave Act. Does the patient's condition[1] qualify under any of the categories described? If so, please check the applicable category.

   (1) _____  (2) _____  (3) _____  (4) _____ (5) _____  (6) _____ , or None of the above  _____

4. Describe the medical facts which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories:

5. a. State the approximate date the condition commenced, and the probable duration of the condition (and also the probable duration of the patient's present incapacity[2] if different):

   b. Will it be necessary for the employee to take work only intermittently or to work on a less than full schedule as a result of the condition (including for treatment described in Item 6 below)?

   If yes, give the probable duration:

   c. If the condition is a chronic condition (condition #4) or pregnancy, state whether the patient is presently incapacitated[2] and the likely duration and frequency of episodes of incapacity[2]:

---

[1] Here and elsewhere on this form, the information sought relates only to the condition for which the employee is taking FMLA leave.

[2] "Incapacity," for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom.

Form WH-380
Revised December 1999

6. a. If additional treatments will be required for the condition, provide an estimate of the probable number of such treatments.

If the patient will be absent from work or other daily activities because of **treatment** on an **intermittent** or **part-time** basis, also provide an estimate of the probable number of and interval between such treatments, actual or estimated dates of treatment if known, and period required for recovery if any:

b. If any of these treatments will be provided by another **provider of health services** (e.g., physical therapist), please state the nature of the treatments:

c. If a **regimen of continuing treatment** by the patient is required under your supervision, provide a general description of such regimen (*e.g.*, prescription drugs, physical therapy requiring special equipment):

7. a. If medical leave is required for the employee's **absence from work** because of the **employee's own condition** (including absences due to pregnancy or a chronic condition), is the employee **unable to perform work of any kind?**

b. If able to perform some work, is the employee **unable to perform any one or more of the essential functions of the employee's job** (the employee or the employer should supply you with information about the essential job functions)? If yes, please list the essential functions the employee is unable to perform:

c. If neither a. nor b. applies, is it necessary for the employee to be **absent from work for treatment?**

8. a. If leave is required to **care for a family member** of the employee with a serious health condition, **does the patient require assistance** for basic medical or personal needs or safety, or for transportation?

b. If no, would the employee's presence to provide **psychological comfort** be beneficial to the patient or assist in the patient's recovery?

c. If the patient will need care only **intermittently** or on a part-time basis, please indicate the probable **duration** of this need:

| | |
|---|---|
| Signature of Health Care Provider | Type of Practice |
| Address | Telephone Number |
| | Date |

**To be completed by the employee needing family leave to care for a family member:**

State the care you will provide and an estimate of the period during which care will be provided, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

| | |
|---|---|
| Employee Signature | Date |

A "Serious Health Condition" means an illness, injury impairment, or physical or mental condition that involves one of the following:

1. Hospital Care

Inpatient care (i.e., an overnight stay) in a hospital, hospice, or residential medical care facility, including any period of incapacity[2] or subsequent treatment in connection with or consequent to such inpatient care.

2. Absence Plus Treatment

(a) A period of incapacity[2] of more than three consecutive calendar days (including any subsequent treatment or period of incapacity[2] relating to the same condition), that also involves:

(1) Treatment[3] two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

(2) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment[4] under the supervision of the health care provider.

3. Pregnancy

Any period of incapacity due to pregnancy, or for prenatal care.

4. Chronic Conditions Requiring Treatments

A chronic condition which:

(1) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;

(2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

(3) May cause episodic rather than a continuing period of incapacity[2] (e.g., asthma, diabetes, epilepsy, etc.).

5. Permanent/Long-term Conditions Requiring Supervision

A period of Incapacity[2] which is permanent or long-term due to a condition for which treatment may not be effective. The employee or family member must be under the continuing supervision of, but need not be receiving active treatment by, a health care provider. Examples include Alzheimer's, a severe stroke, or the terminal stages of a disease.

6. Multiple Treatments (Non-Chronic Conditions)

Any period of absence to receive multiple treatments (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, either for restorative surgery after an accident or other injury, or for a condition that would likely result in a period of Incapacity[2] of more than three consecutive calendar days in the absence of medical intervention or treatment, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), and kidney disease (dialysis).

This optional form may be used by employees to satisfy a mandatory requirement to furnish a medical certification (when requested) from a health care provider, including second or third opinions and recertification (29 CFR 825.306).

*Note:* Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

[3] Treatment includes examinations to determine if a serious health condition exists and evaluations of the condition. Treatment does not include routine physical examinations, eye examinations, or dental examinations.

[4] A regimen of continuing treatment includes, for example, a course of prescription medication (e.g., an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition. A regimen of treatment does not include the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider.

### Public Burden Statement

We estimate that it will take an average of 10 minutes to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, Department of Labor, Room S-3502, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

### DO NOT SEND THE COMPLETED FORM TO THIS OFFICE; IT GOES TO THE EMPLOYEE.

EXHIBIT "G"

From:           Recinos, Scott
Sent:           Wednesday, April 21, 2004 7:09 PM
To:             MacRitchie, Dan
Subject:        RE: Time Off

Hi Dan

Sorry for not getting back to you sooner. I've been on the road most of the last two days. By all means, please take (and enjoy) your vacation. I understand from Dave F., that it is well deserved.

I hope to get up your way either the week of May 3rd or 10th to meet with you and Dave F. regarding current and future projects and you role on them. I look forward to meeting you.

Thanks

Scott

-----Original Message-----
From:           MacRitchie, Dan
Sent:           Tuesday, April 20, 2004 2:26 PM
To:             Recinos, Scott
Subject:        FW: Time Off

Scott,  Just learned you are my boss now -- I had sent this email to Dick earlier today not knowing this change was coming.

Dan MacRitchie, P.E.
Operations Manager, Northeast Service Center
Veolia Water North America
Tel. (603) 766-6753
Fax. (603) 766-6751
195 New Hampshire Avenue, Suite 245
Portsmouth, New Hampshire 03801
E-mail. daniel.macritchie@veoliawaterna.com

Confidentiality Note  This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information.  If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.

-----Original Message-----
From:           MacRitchie, Dan
Sent:           Tuesday, April 20, 2004 12:54 PM
To:             Hurney, Richard
Subject:        FW: Time Off

Dick -- I need to take some time off and I have proposed to take off June 7 through June 18, 2004.  I think that this will be the best time to do so as far as Naugatuck is concerned and with ramping up with future projects.  Please let me know if this is OK with you.

thanks,

Dan MacRitchie, P.E.
Operations Manager, Northeast Service Center
Veolia Water North America
Tel. (603) 766-6753
Fax. (603) 766-6751
195 New Hampshire Avenue, Suite 245
Portsmouth, New Hampshire 03801
E-mail: daniel.macritchie@veoliawaterna.com

**EXHIBIT**

1-17-06

1

Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.

-----Original Message-----
| | |
|---|---|
| From: | Liszewski, Connie |
| Sent: | Tuesday, April 20, 2004 12:47 PM |
| To: | MacRitchie, Dan |
| Subject: | RE: Time Off |

Just let your manager know.


Please note new e-mail address.

Connie J. Liszewski
Human Resources Administrator
Veolia Water North America
Airside Business Park
250 Airside Dr.
Moon Township, PA 15108
Phone: 412-809-6064
Fax: 412-809-6063
e-mail: connie.liszewski@veoliawaterna.com
www.veoliawaterna.com


Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.

-----Original Message-----
| | |
|---|---|
| From: | MacRitchie, Dan |
| Sent: | Tuesday, April 20, 2004 12:15 PM |
| To: | Liszewski, Connie |
| Subject: | RE: Time Off |
| Importance: | high |

OK -- I will take the two weeks, June 7 through June 18. I have timed this period to have the least impact on the Naugatuck project. All work, except for start up and acceptance will be finished on May 28, 2004.

thanks,

Dan MacRitchie, P.E.
Operations Manager, Northeast Service Center
Veolia Water North America
Tel. (603) 766-6753
Fax. (603) 766-6751
195 New Hampshire Avenue, Suite 245
Portsmouth, New Hampshire 03801
E-mail: daniel.macritchie@veoliawaterna.com


Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.

2

-----Original Message-----
From:        Liszewski, Connie
Sent:        Wednesday, April 14, 2004 8:18 AM
To:          MacRitchie, Dan
Subject:     RE: Time Off

You are correct that newborn care falls under the FMLA guidelines. The time you mention is four weeks. If this is correct then I will need the attached papers completed and returned to HR prior to your time off. The physician's statement will indicate the necessity of you being available to care for your child. You are able to use sick time if it is available, otherwise vacation and/or floating holiday may be used or the time can be taken unpaid. If only two weeks are actually needed, the general practice of the Company is to allow new parents to take two weeks off from work using their sick time.

Please let me know which route you would like to take. Any questions let me know. Thanks.............

<< File: Request for Leave of Absence FINAL 040103.doc >>   << File: Certificate of Health Care.pdf >>

Please note new e-mail address.

Connie J. Liszewski
Human Resources Administrator
Veolia Water North America
Airside Business Park
250 Airside Dr.
Moon Township, PA 15108
Phone: 412-809-6064
Fax: 412-809-6063
e-mail  connie.liszewski@veoliawaterna.com
www.veoliawaterna.com

Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer

-----Original Message----- ·
From:        MacRitchie, Dan
Sent:        Tuesday, April 13, 2004 4:01 PM
To:          Liszewski, Connie
Subject:     Time Off
Importance:  High

Connie,

I need to take time off from June 7 through July 2 to take care of my newborn. I understand that FMLA allows for this provided that I give 30-days notice. I also understand that per company policy, I can use accrued sick time for this period. Please let me know if I need to do anything else in the way of paperwork to make this happen.

thanks,

Dan MacRitchie, P.E.
Operations Manager, Northeast Service Center
Veolia Water North America
Tel. (603) 766-6753
Fax. (603) 766-6751
195 New Hampshire Avenue, Suite 245
Portsmouth, New Hampshire 03801
E-mail: daniel.macritchie@veoliawaterna.com

3

EXHIBIT "H"

# O'BRIEN & LEVINE

Court Reporting Services



YOUR BOSTON CONNECTION...WORLDWIDE

## Daniel C. MacRitchie v. Veolia Water North America, et al.

Transcript of the Testimony of:

# Scott P. Recinos

# January 17, 2006

www.court-reporting.com
mail@court-reporting.com

195 State Street
Boston, MA 02109
(617) 399-0130  888.825.DEPO(3376)

ORIGINAL

Carla L. Andrews  1-17843

1

```
 1                    IN THE U.S. DISTRICT COURT

 2

 3

 4     - - - - - - - - - - - - - - - - - - :

 5     DANIEL C. MacRITCHIE,                   :

 6             Plaintiff,                       :

 7             v.                               :    Civil Action

 8     VEOLIA WATER NORTH AMERICA, et al., : No. 05-11064 WGY

 9             Defendants.                      :

10     - - - - - - - - - - - - - - - - - : January 17, 2006

11

12     Deposition of:

13                    SCOTT P. RECINOS

14     called for examination by counsel for the Plaintiff,

15     pursuant to notice, at the offices of 8614 Westwood

16     Center Drive, Suite 950, Vienna, Virginia, at

17     1:02 p.m., before Carla L. Andrews, Notary Public for

18     the Commonwealth of Virginia.

19

20

21

22

23

24     REPORTED BY:    Carla L. Andrews
```

Scott P. Recinos 1-17-2006
Daniel C. MacRitchie v. Veolia Water North America, et al.

9

```
 1        Q    How do you know him?

 2        A    I was his supervisor.

 3        Q    When did you supervise Mr. MacRitchie?

 4        A    Approximately May to June of 2004.

 5        Q    What was Mr. MacRitchie's position within the

 6   company?

 7        A    Project manager.

 8        Q    Did you ever meet Mr. MacRitchie?

 9        A    Yes.

10        Q    When was that?

11        A    I believe it was May of 2004.

12        Q    Where was that?

13        A    Pittsburgh, Pennsylvania.

14        Q    What caused you to meet in Pittsburgh in May

15   of 2004?

16        A    We both attended a project manager's

17   training.

18        Q    You testified that you were the supervisor of

19   Mr. MacRitchie from May to June of 2004; is that

20   correct?

21        A    Approximately, yes.

22        Q    What did that supervision entail?

23        A    General supervision-type tasks.

24        Q    Were you in the same office as
```

EXHIBIT "I"

Page 1

Volume I
Pages 1 to 230
Exhibits 1 - 3
UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - -x
                :

DANIEL C. MACRITCHIE,         :
         Plaintiff,     :
                 :

      vs.            :  Civil Action
                 :  No. 05-11064WGY

VEOLIA WATER NORTH AMERICA :
ENGINEERING AND CONSTRUCTION, :
INC., N/K/A N.A. WATER    :
SYSTEMS, LLC; VEOLIA WATER  :
NORTH AMERICA OPERATING    :
SERVICES, INC.; US FILTER   :
CORPORATION; ANDREW D.     :
SEIDEL; MATTHEW S. THOMPSON; :
JAMES BROWN; MICHAEL RODI;  :
SCOTT RECINOS; JOHN LUCEY;  :
MICHAEL STARK; and BRIAN J. :
CLARKE,              :
         Defendants.    :
                 :

- - - - - - - - - - - - - - - - - -x
        DEPOSITION OF DANIEL C. MACRITCHIE, a
witness called on behalf of the Defendants, taken
pursuant to the Federal Rules of Civil Procedure,
before Daniel P. Wolfe, Registered Professional
Reporter and Notary Public in and for the
Commonwealth of Massachusetts, at the Offices of
Jackson Lewis LLP, 75 Park Plaza, Boston,
Massachusetts, on Monday, December 19, 2005,

commencing at 10:23 a.m.

PRESENT:

    Phillips & Angley

        (by Jonathan M. Feigenbaum, Esq.)

        One Bowdoin Square, Boston, MA 02114,

        for the Plaintiff.

Daniel C. MacRitchie v. Veolia Water North America, et al    Daniel MacRitchie    December 19, 2005

Page 156

1    feel he didn't do the research before he jumped in

2    and took a position?

3         A.    That's correct.

4         Q.    Bates stamp 81 through -- 81 through 89,

5    again from your production last Friday, is another

6    chain of e-mails and then attached documents.  Can

7    you just look at that very quickly.

8         A.    Yes.  (Reviewing document)  Okay.

9         Q.    In general this document has to do with

10   your request for time off, correct, in 2004?

11        A.    It has to do with my request for family

12   medical leave.

13        Q.    What is family medical leave?

14        A.    Family medical leave as defined by the

15   Family Medical Leave Act.

16        Q.    What does that mean?  You are using the

17   phrase.  You are distinguishing it from time off,

18   and I want to understand what is the distinction.

19        A.    Family medical leave as provided under the

20   Family Medical Leave Act.

21        Q.    What is the distinction?  Is that not time

22   off?

23        A.    It is different from time off.

24        Q.    What is the difference?

Page 157

1    A.    It is protected time off that you are

2  entitled to for various reasons, one of which I

3  understood to be the birth of a newborn.

4    Q.    And you ended up taking June 7th through

5  the 18th off, correct?

6    A.    Is it June 7 or June 8 through the 18th?

7  Sometime in that time frame.

8    Q.    That was as a result of your request for

9  that time off, correct?  And I am not asking if it

10  is covered by the FMLA.  Right now I am asking, you

11  wanted time away from work; is that correct?

12        MR. FEIGENBAUM:  Objection.

13    A.    I wanted family medical leave, yes.

14    Q.    Originally the e-mail on April 14 -- I'm

15  sorry.  What was your intent originally on Tuesday,

16  April 13, when you e-mailed Connie asking her if

17  FMLA allows for your request for time off?

18        MR. FEIGENBAUM:  Objection.  You can

19  answer.

20    A.    If you could rephrase the question.  I

21  don't actually ask if it allows for it.

22    Q.    In your e-mail you state that you

23  understand FMLA allows for time off.  "I need to

24  take time off from June 7 through July 2."  I don't

Page 158

1   want to get into a semantic debate here.  My

2   question is, you said you understood that FMLA

3   allows for that.  What was your point in e-mailing

4   Connie?

5       A.   Can I see the e-mail, please?

6       Q.   Before I show it to you, you tell me to

7   your memory, what was your point in e-mailing her on

8   April 13?

9       A.   My understanding, in accordance with the

10  act I needed to provide 30 days notice to take

11  family medical leave.  So my point was to make sure

12  I was following the rules in providing that notice

13  and if there was anything else I needed to do in

14  order to comply with the act, that she advise me of

15  such.

16      Q.   Did you understand that FMLA leave --

17  strike that.  Did you have any idea at that time

18  whether or not FMLA leave time would be paid or

19  unpaid?

20      A.   I did have an understanding.

21      Q.   What was your understanding?

22      A.   My understanding was that I could exhaust

23  sick time and vacation time, and then once that was

24  exhausted it would be unpaid.

Daniel C. MacRitchie v. Veolia Water North America, et al        Daniel MacRitchie                    December 19, 2015

Page 159

1          Q.   Ms. Liscewski on April 14 e-mailed back to

2     you.  In her e-mail she says, "If only two weeks are

3     actually needed, the general practice of the company

4     is to allow new parents to take two weeks off from

5     work using their sick time," right?

6          A.   That's what it says.

7          Q.   Okay.  Then she says, "Please let me know

8     which route you would like to take."  What does that

9     mean?

10              MR. FEIGENBAUM:  Objection.

11         Q.   Did you know what that meant?

12              MR. FEIGENBAUM:  He is asking you what she

13    thought.

14         A.   You are asking me what I thought she

15    thought?

16         Q.   Yes.  What was your interpretation of that?

17              MR. FEIGENBAUM:  He wants you to interpret

18    what she was saying.

19         Q.   That phrase.

20         A.   My interpretation of it was that I needed

21    to fill out --

22         Q.   No.  This phrase, "Please let me know which

23    route you would like to take," what did you

24    understand that to mean?

Daniel C. MacRitchie v Veolia Water North America, et al.    Daniel MacRitchie                                      December 19, 2005

Page 160

1       A.    Whether I wanted to have a physician fill

2    out the form to take four weeks or whether I just

3    wanted to take two weeks without the physician's

4    forms.

5       Q.    You say as a response, "I will take the two

6    weeks June 7 through the 18th."  Is that what you

7    are saying?

8       A.    That's what it says.

9           MR. FEIGENBAUM:  Could you just read,

10   Steve, what document number that is so it shows up

11   in the deposition.

12          MR. PATERNITI:  Bates stamp 83.

13      Q.    On Bates stamp 82 it looks like you are

14   e-mailing your boss at the time, Dick Hurney, to

15   tell him -- this is part of the continuing e-mail

16   chain -- that you want to take two weeks off.  This

17   is June 7 through 18.  You wrote that e-mail,

18   correct?

19      A.    Yes.

20      Q.    That is Tuesday, April 20, at 12:54 p.m.?

21      A.    Yes.

22      Q.    You did the same thing to Scott Recinos on

23   April 20 at 2:26 p.m. because apparently, as you

24   wrote, you just learned he was your boss, correct?

Page 161

```
1        A.    Yes.

2        Q.    And Recinos' response to you a day later,

3   do you remember receiving this at the time?

4        A.    Yes.

5        Q.    Did you have any discussion with Recinos or

6   any communication with him other than this e-mail

7   about your time off or FMLA time?

8        A.    I'm not sure of the exact date, but I met

9   Scott in Pittsburgh for a meeting when I told him

10  that I was taking FMLA and we talked about kids and

11  what my status was.

12       Q.    Obviously it would have been after this

13  because --

14       A.    Yes.

15       Q.    -- as of April 20 you didn't even know he

16  was your boss?

17       A.    Exactly.

18             MR. PATERNITI:  You know what?  I made a

19  mistake earlier on the record.  Exhibit 1 is Bates

20  stamped No. 1 through 1137.  I misstated it earlier

21  and stated 1068 was the last number.

22       Q.    Did you have any conversations with anyone

23  else about this leave time that you wanted in June?

24       A.    I remember sending an e-mail out at some
```

Case 1:05-cv-11064-WGY    Document 17-10    Filed 03/07/2006    Page 9 of 12

Daniel C. MacRitchie v  Veolia Water North America, et al.    Daniel MacRitchie                December 19, 2005

Page 162

1   point letting people know that I was going to be on

2   FMLA for that two-week period.  I know Rick Lavoie

3   was on the e-mail to list.  But I don't remember who

4   else I sent it to.

5       Q.   Other than that, you didn't have any other

6   communications with anybody about your leave time?

7       A.   I am sure I did.  I just don't remember.

8       Q.   Your FMLA claim -- upon what facts do you

9   base your claim of FMLA violation?

10          MR. FEIGENBAUM:  Objection.  You can

11  answer.

12      A.   Well, I think that the denial of the four

13  weeks was the first one.

14      Q.   Who denied you four weeks?

15      A.   Connie Liscewski.

16      Q.   In that e-mail?

17      A.   Yes.

18      Q.   When I say "that e-mail," the specific

19  e-mail was Exhibit -- starting with Bates stamp No.

20  81 going through Bates stamp No. 89.

21          Okay.  Are there any other facts upon which

22  you base that allegation of FMLA violation?

23      A.   Yes.  I think that attempts by Scott

24  Recinos and others to recharacterize it as vacation

Daniel C. MacRitchie v. Veolia Water North America, et al.        Daniel MacRitchie                                December 19, 2005

Page 163

1    was a violation.

2        Q.    I see.  Are there any other facts upon

3    which you base that claim?

4        A.    I think that the beginning of complaining

5    about my performance two or three days before taking

6    my family medical leave was the beginning of the

7    retaliation for taking a leave.

8        Q.    You are saying that you were retaliated

9    against for taking the leave?

10       A.    Yes.

11       Q.    Can you explain to me the basis of that

12   allegation?

13       A.    The basis for the allegation is what I have

14   said so far, that that was starting to set the stage

15   for the ultimate termination two weeks later,

16   complaining about my performance two days before I

17   am getting ready to go, that I need to be down there

18   right away.

19       Q.    Who retaliated against you?

20       A.    I think Scott Recinos did.

21       Q. · Wait.  Did Scott Recinos complain about

22   your performance?

23       A.    Scott Recinos terminated me.  That was the

24   ultimate in the retaliation.

Daniel C. MacRitchie v Veolia Water North America, et al.    Daniel MacRitchie    December 19, 2005

Page 164

1    Q.    You were terminated, you are saying, in

2    retaliation for what?

3    A.    Taking family medical leave.

4    Q.    Taking two weeks off?

5    A.    Yes.

6    Q.    Explain to me -- you believe Recinos

7    retaliated against you for taking two weeks off?

8    A.    Yes.

9    Q.    Anybody else retaliate against you for

10   taking two weeks off?

11   A.    I think the company did.

12   Q.    Who specifically?

13   A.    Mike Rodi.

14   Q.    Mike Rodi.  Upon what do you base your

15   allegation that Rodi and Recinos were motivated to

16   terminate you because you took two weeks off?

17   A.    Because there was no valid reason to get

18   rid of me.

19   Q.    Because you disagreed with what Hodgkins'

20   conclusions were?  Is that what you are saying?

21   A.    That's not the stated reason why I was

22   terminated.  First Scott Recinos tells me I am being

23   laid off because there's no more work.  Then I ask

24   him about that.  And then he says, "I'm too busy.

Daniel C. MacRitchie v. Veolia Water North America, et al.    Daniel MacRitchie                         December 19, 2005

Page 165

1   I've got another important phone call" and hangs up.

2   Then Mike Rodi tells me that he can't explain it to

3   me because it is so technical.  And I say, "You need

4   to explain what it is if there's a basis for why I

5   am being terminated."  He goes, "No, I don't."  So

6   they can't come up with a reason.  They won't tell

7   me, they change their story, they recharacterize my

8   FMLA as vacation time, they deny my request for four

9   weeks, and they terminate me while I am on family

10  medical leave.

11       Q.   Let's go through each one.  You are

12  referring to a phone call, right, that you had with

13  Mr. Rodi and Mr. Recinos on or about June 17 of

14  2004, correct?

15       A.   June 18.

16       Q.   June 18.  That's the last day of your

17  leave, correct?

18       A.   Yes.

19       Q.   And the purpose of that phone call was to

20  figure out if you were even coming back to work;

21  isn't that correct?

22       A.   The purpose of the phone call, as stated to

23  me, was to discuss a contractor claim.

24       Q.   At that point on June 18, had it been

EXHIBIT "J"



### CERTIFICATION OF RECEIPT
for
### USFILTER EMPLOYEE HANDBOOK
and
### USFILTER EMPLOYEE HEALTH, SAFETY AND ENVIRONMENTAL (HSE) HANDBOOK

I hereby acknowledge that I have received a copy of the United States Filter Corporation ("USFilter") Employee Handbook ("Employee Handbook"). I have carefully read the entire Employee Handbook, understand its contents and agree to comply with the various policies and practices of USFilter as set forth in this Employee Handbook, including, but not limited to, the sections titled:

- Business Conduct Policy
- Confidentiality and Development Agreement
- Drug and Alcohol Free Workplace
- Electronic Messaging Systems
- Respect in the Workplace
- Restrictions on Insider Trading by Directors, Officers and Employees of United States Filter Corporation
- Vacations

I also hereby acknowledge that I have received a copy of the USFilter Employee HSE Handbook ("HSE Handbook"), which outlines and defines training programs, inspections and audits and employee awareness. Further, I understand that I am responsible to read, understand and adhere to the safety policies covered in this HSE Handbook.

I understand that any policies, procedures, benefits, training programs, inspections and audits described in the Employee Handbook or in the HSE Handbook may be modified or rescinded by the Company in its sole discretion at any time, with or without notice, except for the rights of the parties to terminate employment at will, which rights may be modified only by an express written agreement signed by both me and an officer of USFilter.

I also understand that neither the Employee Handbook, the HSE Handbook, nor any other communication by a management representative, is intended in any way to create a contract of employment, either express or implied. Rather, I understand that USFilter and I each have the right to end our employment relationship for any reason at any time, with or without notice, and with or without cause. I further understand and agree that USFilter in sole discretion may promote, demote, and change my title, compensation, duties or other conditions of my employment at any time with or without cause.

I further acknowledge my responsibility for (a) timely payment of any outstanding debt, including, but not limited to, vacation or other payroll advances of any kind, my Corporate Card Account(s) and any other indebtedness that I have incurred as an employee of USFilter, and (b) preserving and, upon termination of employment, returning Company property. I understand that any delinquency in repayment of my Corporate Card balance(s) or any other indebtedness that I have incurred as an employee of USFilter may, in some cases, result in automatic repayment through payroll deduction by USFilter during and/or upon my separation from employment.

ACKNOWLEDGMENT:

_____    11/19/02

Employee Signature                  Date

Daniel   MacRitchie
_____
Name (please print)

**RECEIVED**

NOV 2 6 2002

US FILTER E & C
HUMAN RESOURCES

PLEASE RETURN THIS RECEIPT TO YOUR HR REPRESENTATIVE

10/02

000000284

Table of Contents

000000287

# TABLE OF CONTENTS

Welcome ............................................................................ WEL

Mission Statement and Core Values ............................... MIS

Introduction ..................................................................... INT
        About this Handbook ............................................ INT1
        The History of USFilter ......................................... INT3
        Our Company Philosophy ..................................... INT9
        Respect in the Workplace ..................................... INT11

Awards ............................................................................. AWA
        A Call for Papers .................................................. AWA1
        Employee Referral Program .................................. AWA3
        Patent Recognition and Award Program .............. AWA5
        Perfect Attendance Award .................................... AWA7
        Safe Driving Award .............................................. AWA9
        Service Recognition Award ................................... AWA11

Benefits .......................................................................... BEN
        Benefit Summary ................................................. BEN1
        Educational Assistance ......................................... BEN3
        Holidays ................................................................ BEN5
        Vacations ............................................................. BEN7

Employment Policies ...................................................... EPO
        Attendance ............................................................ EPO1
        Bulletin Boards .................................................... EPO3
        Business Conduct ................................................. EPO5
        Compliance Hotline .............................................. EPO9
        Confidentiality and Development Agreement ...... EPO13
        Conflict of Interest .............................................. EPO17
        Drug and Alcohol Free Workplace ...................... EPO19
        Electronic Messaging Systems ............................. EPO39
        Employment Classifications ................................. EPO41
        Employee Records ................................................ EPO43
        Employment of Relatives ..................................... EPO45
        Expense Reimbursement ...................................... EPO47
        Immigration Requirements ................................... EPO49
        Internal Employment Opportunities .................... EPO51

0 0 0 0 0 0 2 8 ?

TAB-1                                                    1/1/99

Introductory Period .......................................................... EPO53
Personal Appearance and Attire .......................................... EPO55
Property of Company and Employee ................................. EPO57
Re-Employment ................................................................. EPO59
Relocation .......................................................................... EPO61
Smoke-Free Workplace ...................................................... EPO63
Social Functions ................................................................ EPO65
Solicitation and Distribution............................................. EPO67
Stock Trading Restrictions/Reporting Requirements ........ EPO69
Termination of Employment.............................................. EPO73
Visitors and Personal Communications ............................. EPO75
Workplace Violence ........................................................... EPO77
Work Schedule .................................................................. EPO79
Breaks and Meal Periods ................................................... EPO79

Leave of Absence .............................................................. LEA
Bereavement Leave ............................................................ LEA1
Disability Leave.................................................................. LEA3
Family and Medical Leave ................................................. LEA9
Jury Duty Leave ................................................................. LEA15
Military Leave .................................................................... LEA17
Personal Leave of Absence ................................................ LEA19
Sick Leave .......................................................................... LEA21

Payroll ............................................................................. PAY
Paycheck ............................................................................ PAY1
Payroll Deductions ............................................................ PAY1
Payroll Timekeeping.......................................................... PAY2
Overtime ............................................................................ PAY3
On-Call and Reporting Pay ............................................... PAY3

Performance Development .............................................. PER
The Performance Development Process ............................. PER1
Your Career at USFilter ..................................................... PER6

Safety  ............................................................................... SAF
Restriction/Rules for Operating Company Vehicles.......... SAF1
Safe Driving....................................................................... SAF3
Safety and Accident Reporting ......................................... SAF5

Site-Specific Procedures .................................................. SIT

000000289

TAB-3                                                                          1/1/99

# FAMILY AND MEDICAL LEAVE

This policy is in accordance with U.S. Federal law. State, provincial or other national law may apply. Please consult with your Human Resources Representative.

The Leave Policy. If you are employed by USFilter in the United States, you are eligible to take up to 12 weeks of unpaid family and medical leave within any 12-month period and be restored to the same or a comparable position upon your return from leave provided you have: (1) worked for USFilter for at least 12 months; and for at least 1250 hours in the last 12 months. The 12-month period in which you may take 12 weeks of leave will be measured as calendar year.

Reasons for Leave. You may take family and medical leave for any of the following reasons: (1) the birth of a child and in order to care for such child; (2) the placement of a child with you for adoption or foster care and in order to care for the newly placed child; (3) to care for a spouse, child or parent ("covered relation") with a serious health condition; or (4) because of your own serious health condition which renders you unable to perform an essential function of your position. Leave because of reasons "1" or "2" must be completed within the 12-month period beginning on the date of birth or placement. In addition, spouses employed by the Company who request leave because of reasons "1" or "2" may only take a combined total of 12 weeks leave during any 12-month period.

Notice of Leave. If your need for family and medical leave is foreseeable, you must give USFilter at least 30 days' prior, preferably written, notice. If this is not possible, you must at least give notice as soon as practicable (generally within one to two business days of learning of your need for leave). Failure to provide such notice may be grounds for delay of leave. Additionally, if you are planning a medical treatment, you must consult with the Company first regarding the projected dates of such treatment. Where the need for leave is not foreseeable, you should notify the Company as soon as possible and practicable.

Medical Certification. If you are requesting leave because of your own or a covered relation's serious health condition, you must provide

G000002

appropriate medical certification from the relevant healthcare provider within 15 calendar days' after you request leave, if practicable. If you provide at least 30 days' notice of medical leave, you should provide the medical certification before leave begins. Failure to provide requested medical certification in a timely manner may be grounds for delay of leave.

USFilter, at its expense, may require an examination by a second healthcare provider designated by the Company if it reasonably doubts the medical certification you initially provide for your own serious health condition. If the second healthcare provider's opinion conflicts with the original medical certification, the Company, at its expense, may require a third, mutually agreeable, healthcare provider to conduct an examination and provide a final and binding opinion.

The Company may require subsequent medical re-certification at the expiration of your previous certification. Failure to provide requested re-certification within 15 days, if such is practicable, may result in delay of further leave until it is provided.

Reporting while on Leave. If you take leave because of your own serious health condition or to care for a covered relation, you must contact the Company every 30 days regarding the status of the condition and your intention to return to work. In addition, you must give notice as soon as practicable within two business days, if feasible, if the dates of leave change, are extended or initially were unknown.

Leave is Unpaid. Family and medical leave is unpaid leave, although you may be eligible for short or long-term disability benefit payments and/or workers' compensation benefits under those insurance plans. Those plans are described elsewhere in this handbook. You may also apply any remaining personal floating holidays, accrued vacation or, if your personal health is involved, accrued sick time. The substitution of paid leave time for unpaid leave time does not extend the 12-week leave period. Further, in no case can the substitution of paid leave time for unpaid leave time result in your receiving more than 100% of your base salary.

Medical and other Benefits. During the 12 weeks of an approved family and medical leave, USFilter will maintain your insurance benefits as if you continued to be actively employed. If paid leave is substituted for

unpaid family and medical leave, the Company will deduct your insurance premium contributions as a regular payroll deduction. If your leave is unpaid, it is your responsibility to make arrangements for the premium payment to prevent cessation of coverage.

Intermittent and Reduced Schedule Leave. Leave because of a serious health condition, including pregnancy-related disabilities, may be taken intermittently (in separate blocks of time due to a single health condition) or on a reduced leave schedule (reducing the usual number of hours you work per workweek or workday) if medically necessary. Employees may also be eligible for intermittent leave for birth or placement of a child.

If leave is unpaid, the Company will reduce your salary based on the amount of time actually worked. In addition, while you are on an intermittent or reduced schedule leave, the Company may temporarily transfer you to an available alternative position which better accommodates your recurring leave and which has equivalent pay and benefits.

Returning from Leave. If you take leave because of your own serious health condition (except if you are taking intermittent leave), you are required to provide medical certification that you are fit to resume work. Please submit such certification to your Human Resources Representative at least two business days, or in as much time in advance as possible, prior to your expected return to work date. You will not be permitted to resume work until the certification is provided and unreasonable delay in this regard may be deemed voluntary termination of employment with the Company.

No Work while on Leave. The taking of another job while on a family and medical leave will be interpreted as voluntary termination.

Definitions. For the purposes of this Family and Medical Leave policy, the following definitions apply:

"Spouse" means a partner in marriage.

"Parent" includes biological, foster, adoptive, stepparents, legal guardian or other person who stood in loco parentis to the

employee when the employee was a child but does not include parents in-law.

"Child" includes biological, adopted, foster children, stepchildren, legal wards and other persons for whom you act in the capacity of a parent and who is either under 18 years of age or over 18 year of age but incapable of caring for themselves because of a physical or mental disability.

"Serious Health Conditions" means:

A.  An illness, injury, impairment or physical or mental condition which involves: (1) "inpatient care," meaning an overnight stay in a hospital, hospice or residential care facility, including any period of "incapacity" or any subsequent "treatment" in connection with such inpatient care; or (2) "continuing treatment" by a "healthcare provider," meaning an incapacity of more than three consecutive calendar days; and (3) two or more treatments by a healthcare provider, by a nurse or physician's assistant under direct supervision of a healthcare provider or by a provider of healthcare services, such as physical therapist, under orders or referral of a healthcare provider; or one treatment by a healthcare provider which results in a "regimen of continuing treatment" under the supervision of the healthcare provider, such as prescription medication.

B.  Any period of incapacity because of pregnancy or prenatal care even without treatment by a healthcare provider during the absence and even if the absence is less than three days (such as morning sickness); or any period of incapacity because of a "chronic serious condition" even without treatment by a healthcare provider during the absence and even if the absence is less than three days (such as asthma attack, migraine headaches, etc.); or any period of absence to receive multiple treatments by healthcare providers or a provider of healthcare services under order or referral of a healthcare provider for reconstructive surgery after an accident or injury or for a condition that would likely result in a period of incapacity of more than three consecutive calendar days if untreated, such as cancer (chemotherapy), severe arthritis (physical therapy), kidney disease (dialysis).

"Continuing treatment" means: (1) two or more treatments by a healthcare provider; (2) two or more treatments by a provider of healthcare services, such as physical therapist, on referral by or under orders of a healthcare provider; (3) at least one treatment by a healthcare provider which results in a regimen of continuing treatment under the supervision of the healthcare provider, e.g., a program of medication or therapy; or (4) under the supervision of, although not active-ly treated by, a healthcare provider for a serious long-term or chronic condition or disability which cannot be cured, such as Alzheimer's or severe stroke.

"Healthcare provider" means: (1) an M.D. or D.O. licensed by the State or country in which he/she practices; (2) podiatrists, dentists, clinical psycholo-gists, optometrists, chiro-practors (limited treatment consisting of manual manipulation of the spine to correct a subluxation as demonstrated by x-ray to exist) authorized to practice under state law; (3) nurse practitioners and nurse-midwives authorized under state law; (4) Christian Science practitioners (may be required to submit to second or third certification through examination - not treatment of a healthcare provider); (5) certified social workers; (6) a healthcare provider who practices in a foreign country in accordance with the laws of that country; and (7) any other healthcare provider from whom the Company will accept certification of the existence of a serious health condition to substantiate a claim for benefits.

"Needed to care for" a family member encompasses: (1) physical and psychological care of a child, spouse or parent with a serous health condition; and (2) where the employee is needed to fill in for others providing care or to arrange for third-party care of a child, spouse or parent who is receiving inpatient or home care.

The phrase "unable to perform the functions of his/her job" means an employee is: (1) unable to work at all; or (2) unable to perform any one of the essential functions of his/her position at the time notice is given or leave commenced, whichever is earlier. The term "essential functions" means "the fundamental job duties of the employment position" but does not include the marginal functions of the position.

000000396

## SICK LEAVE

All Full-time Regular (FTR) and Part-time Regular (PTR) employees are eligible for paid sick leave. Eligible employees will receive payment for sick time at their normal base rate of pay, pro-rated for PTR employees. Sick days may be used for your personal illness or the illness of a child, or a doctor or dentist appointment for you or your child. Sick days may also be used for reasons of family and medical leave that are in accordance with state, provincial, U.S. federal (FMLA) or other national law.

Sick leave will accumulate at the rate of five days per year for non-exempt employees with carryover from year to year of up to a maximum of 20 days.

Exempt employees are entitled to 20 sick days per year with no carryover.

If you are on sick leave, you need to present a medical certificate before returning to work if you are absent for three (3) or more consecutive days. The medical certificate needs to be provided by your health care provider, a Medical Doctor (M.D.) or Doctor of Osteopathy (D.O.).

We do not pay employees for unused sick leave upon termination of employment.

000000402

EXHIBIT "K"

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DANIEL C. MACRITCHIE,

                    Plaintiff,

          vs.

VEOLIA WATER NORTH AMERICA
ENGINEERING & CONSTRUCTION, INC.
N/K/A N.A. WATER SYSTEMS, LLC;
VEOLIA WATER NORTH AMERICA
OPERATING SERVICES, INC.; US
FILTER CORPORATION; ANDREW D.
SEIDEL; MATTHEW S. THOMPSON;
JAMES BROWN; MICHAEL RODI;
SCOTT RECINOS; JOHN LUCEY;
MICHAEL STARK; and BRIAN J.
CLARKE,

                    Defendants.

Civil Action No. 05-11064-WGY

## RESPONSE OF DEFENDANT, N. A. WATER SYSTEMS, LLC, TO PLAINTIFF, DANIEL C. MACRITCHIE'S, FIRST SET OF INTERROGATORIES

Defendant, N.A. Water Systems, LLC ("NAWS"), responds to Plaintiff's First Set of Interrogatories as follows:

### GENERAL OBJECTIONS

1.     Defendant objects to each interrogatory to the extent it calls for information beyond the scope of discovery required by the Federal Rules of Civil Procedure.

2.     Defendant objects to each interrogatory that calls for privileged information pursuant to the work product doctrine or attorney-client doctrine.

3.     Defendant objects to each interrogatory to the extent it seeks responses that are not reasonably calculated to lead to the discovery of admissible evidence.

FMLA leave. Subject to and without waiving its general or specific objections, NAWS states

that Plaintiff requested, and was approved for, two weeks off in June.

### INTERROGATORY NO. 11

State all reasons that the Defendant requested on April 14, 2004 that the Plaintiff would need to provide a physician statement indicating that it was necessary for the Plaintiff to care for his new born child.

### ANSWER NO. 11

NAWS refers Plaintiff, pursuant to Rule 33(d), to the emails between Plaintiff and

Connie Liszewski in April, 2004.

Then came Michael Rodi, as a duly-authorized representative of Defendant N.A. Water Systems, LLC, and stated under the pains and penalties of perjury on this _____ day of November, 2005, that the foregoing answers represent the answers of Defendant and are true based upon personal knowledge or true to the best of his information and belief if compiled by others.

Michael Rodi
N.A. Water Systems, LLC

As to objections:
Respectfully submitted,

N.A. WATER SYSTEMS, LLC,
By its attorneys,

Stephen T. Paterniti, BBO #564860
Amanda S. Rosenfeld, BBO #654101
JACKSON LEWIS LLP
75 Park Plaza
Boston, MA 02116
(617) 367-0025; (617) 367-2155 – fax

-5-

EXHIBIT "L"

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIEL C. MACRITCHIE )<br><br>    Plaintiff,   )<br><br>v.   )<br><br>VEOLIA WATER NORTH AMERICA )<br>ENGINEERING & CONSTRUCTION, INC. )<br>N/K/A N.A. WATER SYSTEMS, LLC; )<br>VEOLIA WATER NORTH AMERICA )<br>OPERATING SERVICES, INC.; )<br>US FILTER CORPORATION; )<br>ANDREW D. SEIDEL; )<br>MATTHEW S. THOMPSON; )<br>JAMES BROWN; )<br>MICHAEL RODI; )<br>SCOTT RECINOS; )<br>JOHN LUCEY; )<br>MICHAEL STARK; and )<br>BRIAN J. CLARKE, )<br><br>    Defendants.   ) | ) CIVIL ACTION NO. 05-11064WGY |

## PLAINTIFF, DANIEL C. MACRITCHIE'S, FIRST SET OF REQUESTS FOR ADMISSION TO THE DEFENDANT, N.A. WATER SYSTEMS, LLC

Pursuant to Rule 36 of the F.R.C.P., the Plaintiff Daniel C. MacRitchie requests that the

Defendant, N. A. Water Systems, LLC, respond to the admissions within thirty (30) days, at

Phillips & Angley, One Bowdoin Square, Boston, Massachusetts 02114.

## GENERAL DEFINITIONS AND INSTRUCTIONS

1.    These requests incorporate local rule 26.5 of the Local Rules of the United States District

Court for the District of Massachusetts.

1

## ADMISSIONS REQUESTED

| Admission No. | Exhibit | Document Description and/or Document Identified by Number Stamp | a. Authentic | | b. Record of Regularly Conducted Activity | | c. Authorized | | d. Statement Made Within the Scope of Employment | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Admit | Deny | Admit | Deny | Admit | Deny | Admit | Deny |
| 1. | A | DEF00095-DEF00105 | | | | | | | | |
| 2. | B | DEF00154-DEF00166 | | | | | | | | |
| 3. | C | DEF00106 | | | | | | | | |
| 4. | D | DEF00167-DEF00168 | | | | | | | | |
| 5. | E | Separation Agreement and General Release | | | | | | | | |
| 6. | F | Email chain from April 13, 2004 to April 14, 2004 between Plaintiff and Connie Liszewski | | | | | | | | |

7.      Admit or deny that attached Exhibit C was not included in Plaintiff's personnel file which Defendant produced in its automatic disclosures on September 14, 2005.

8.      Admit or deny that attached Exhibits A, B, C, and D are all of the written communications stating the basis for the Plaintiff's termination from N.A. Water Systems, LLC on or about June 18, 2004.

9.      Admit or deny that paragraph 4A(iv) of Exhibit E is a violation of the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.*

10.      Admit or deny that requiring the Plaintiff to complete a physician's statement as set out in Exhibit F is a violation of the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.*

4

The Plaintiff,
DANIEL C. MACRITCHIE
By his attorneys,

Date:  December __9__, 2005

Jonathan M. Feigenbaum, Esq.
B.B.O. #546686
Stephanie M. Swinford, Esq.
B.B.O. #654135
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No. (617) 367-8787

CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing to all parties or their counsel of record this day by mail.

Date: December __9__, 2005

Stephanie M. Swinford, Esq.

L:\LITG\Dmac002\AdmissionNAWS.wpd

5

EXHIBIT "F"

To:            Liszewski, Connie
Subject:       RE: Time Off
Importance:    High

OK -- I will take the two weeks, June 7 through June 18. I have timed this period to have the least impact on the Naugatuck project. All work, except for start up and acceptance will be finished on May 28, 2004.

thanks,

Dan MacRitchie, P.E.
Operations Manager, Northeast Service Center
Veolia Water North America
Tel. (603) 766-6753
Fax. (603) 766-6751
195 New Hampshire Avenue, Suite 245
Portsmouth, New Hampshire 03801
E-mail: daniel.macritchie@veoliawaterna.com

Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.

-----Original Message-----
From:        Liszewski, Connie
Sent:        Wednesday, April 14, 2004 8:18 AM
To:          MacRitchie, Dan
Subject:     RE: Time Off

You are correct that newborn care falls under the FMLA guidelines. The time you mention is four weeks. If this is correct then I will need the attached papers completed and returned to HR prior to your time off. The physician's statement will indicate the necessity of you being available to care for your child. You are able to use sick time if it is available, otherwise vacation and/or floating holiday may be used or the time can be taken unpaid. If only two weeks are actually needed, the general practice of the Company is to allow new parents to take two weeks off from work using their sick time.

Please let me know which route you would like to take. Any questions let me know.
Thanks.............

<< File: Request for Leave of Absence FINAL 040103.doc >>  << File: Certificate of Health Care.pdf >>

Please note new e-mail address.

Connie J. Liszewski
Human Resources Administrator
Veolia Water North America
Airside Business Park
250 Airside Dr.
Moon Township, PA 15108
Phone:  412-809-6064
Fax:  412-809-6063
e-mail:  connie.liszewski@veoliawaterna.com
www.veoliawaterna.com

3

Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.

-----Original Message-----
| | |
|---|---|
| From: | MacRitchie, Dan |
| Sent: | Tuesday, April 13, 2004 4:01 PM |
| To: | Liszewski, Connie |
| Subject: | Time Off |
| Importance: | High |

Connie,

I need to take time off from June 7 through July 2 to take care of my newborn. I understand that FMLA allows for this provided that I give 30-days notice. I also understand that per company policy, I can use accrued sick time for this period. Please let me know if I need to do anything else in the way of paperwork to make this happen.

thanks,

Dan MacRitchie, P.E.
Operations Manager, Northeast Service Center
Veolia Water North America
Tel. (603) 766-6753
Fax. (603) 766-6751
195 New Hampshire Avenue, Suite 245
Portsmouth, New Hampshire 03801
E-mail: daniel.macritchie@veoliawaterna.com

Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.

4

EXHIBIT "M"



**From:** Recinos, Scott
**Sent:** Wednesday, June 09, 2004 7:48 AM
**To:** MacRitchie, Dan
**Subject:** Naugatuck Acceptance plans

Dan

I got a call this AM from Dave F. inquiring about the status the Acceptance test plans for the BNR & incinerator. Apparently we received comments from ARI and the plans need to be finalized to incorporate their comments as well as reflect some of the "modifications" Ops has made during the start-up/demonstration activities.

Also-Bob L. told Dave they were not aware of your planned vacation/time-off. Please let me and the VWNA team know the status of the plans and how you can be contacted by VWNA while away.

Hope all is well.

Thanks

Scott

EXHIBIT "N"

---

**From:** MacRitchie, Dan

**Sent:** Wednesday, June 09, 2004 8:09 PM

**To:** Recinos, Scott

**Cc:** Hurney, Richard; Yendell, Craig; Cashdollar, Rich; Brown, Jim (HPD); THERY, Frederic; Mracna, Joseph; Cotter, Jeanne; David Ford (E-mail)

**Subject:** RE: Naugatuck Project Review Meeting

Attached is the monthly report update for Tomorrow's Naugatuck review meeting.

<<...>>

Dan MacRitchie, P.E.
Veolia Water Systems
Tel. (603) 766-6753
Fax. (603) 766-6751
195 New Hampshire Avenue, Suite 245
Portsmouth, New Hampshire 03801
E-mail: daniel.macritchie@veoliawaterna.com

Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.

-----Original Message-----
**From:** Recinos, Scott
**Sent:** Wednesday, June 09, 2004 3:43 PM
**To:** MacRitchie, Dan
**Cc:** Hurney, Richard; Yendell, Craig; Cashdollar, Rich; Brown, Jim (HPD); THERY, Frederic; Mracna, Joseph; Cotter, Jeanne

**Subject:** Naugatuck Project Review Meeting

All

We have rescheduled the Naugatuck Project Review meeting for tomorrow at 3 PM EST. Please call-in at 888-651-0033; conference code 301-840-6701.

Dan-Please send everyone your updated project review forms

Thanks all

**Scott Recinos, P.E.**
Gaithersburg Regional Service Center Manager
NA Water Systems
400 Professional Drive, Suite 380
Gaithersburg, MD 20879

Direct Phone: (301) 840-6701 Facsimile: (301) 948-9258
Cell: (240) 401-3242
e-mail: scott.recinos@veoliawaterna.com


Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.



**From:** Recinos, Scott
**Sent:** Wednesday, June 09, 2004 4:05 PM
**To:** Kelly, William
**Cc:** Ford, David; MacRitchie, Dan
**Subject:** RE: Naugatuck Table with 5 Points to Warren Terrell

Bill

Thanks for the feed back. At this point, given the personalities involved and "past history", I concur that we leave Bob along with regards to the "extra pumps" (I'm assuming that VWNA has never gone on record stating to us that the design wouldn't work w/out the pumps-i.e. they are responsible for purchasing permanent pumps if they want them).

Dan-your thoughts??

Scott

-----Original Message-----
From: Kelly, William
Sent: Wednesday, June 09, 2004 11:46 AM
To: Recinos, Scott
Subject: RE: Naugatuck Table with 5 Points to Warren Terrell

The last five data points from Naugatuck's outside analytical lab (all in the 2nd half of May) show that the effluent total nitrogen is less than 5 mg/l - the contractual performance test criterion. On the surface, this is good news because it indicates that we can run The performance test in July if we want to.

Underlying the good news is a concern that I have which maybe isn't very important but which needs to be considered. Bob Lambalot has made the plant work his way - by using two additional pumps that he added without any consultation from Airside or Dufresne-Henry. The additional pumps were not part of the proposal to the client and not part of the plant modification package approved by the regulators. If the plant performance test is successful, I think it is unlikely that either the Owner or ARI or the regulators would make a fuss about the additional pumps, but they possibly could. Secondly, if we complete the performance test with the extra pumps in service, then we've made them part of the 'process' and they're something that we owe to the Owner - Bob's only renting them now. Bob says that the cost is negligible, but I don't know whose money he's spending. I also don't know how 'permanent' the pump installation is - ie., are they tied into back-up power, alarms, etc.?

If we tried to get the operating staff to operate the plant per the upgrade design, without the extra pumps, I think that the response would be hostility and relative non-cooperation. We would probably have to put our own personnel on-site to see if we could make it work as originally intended. And there's a risk of failure. But if we don't try, history will list the Naugatuck project as another example of an E&C screw-up where Operating Services saved the project from failure.

I guess the most important thing is getting through the performance test and another step closer to closing out a bad project regardless of who gets the credit or blame. In a recent conversation with Dufresne-Henry, I got the impression that they're ready to endorse the use of Bob's extra pumps rather than sticking to their original design. Perhaps we should take the easy road also.

Bill Kelly
Process Engineer
Veolia Water - N.A. Water Systems

250 Airside Drive
Moon Township, PA 15108-2793
Direct:    412-809-6646
Facsimile: 412-809-6642
william.kelly@veoliawaterna.com
www.usfilter.com

Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.

-----Original Message-----
From:  Recinos, Scott
Sent:  Tuesday, June 08, 2004 10:48 PM
To:    Kelly, William
Subject:    FW: Naugatuck Table with 5 Points    to Warren Terrell

<< File: BNR Test Results and Conditions.xls >> Bill

What's the data telling us? Is the plant working? Please advise.

Thanks

Scott

-----Original Message-----
From: Ford, David
Sent: Tuesday, June 08, 2004 9:48 PM
To: Dan MacRitchie; William Kelly
Cc: Bill Rosenbaum; Scott Recinos
Subject: FW: Naugatuck Table with 5 Points to Warren Terrell

FYI, if you haven't seen it already.

-----Original Message-----
From: Ketcham, Judith [mailto:JKetcham@dufresne-henry.com]
Sent: Tuesday, June 08, 2004 1:03 PM
To: david.ford@veoliawaterna.com
Subject: FW: Naugatuck Table with 5 Points to Warren Terrell

David

John Murphy asked me to forward you this email and the attachment.

Judy

-----Original Message-----
From: Lambalot, Robert [mailto:lambalre@usfilter.com]
Sent: Monday, June 07, 2004 3:04 PM

2/23/2006

To: Ketcham, Judith
Subject: RE: Naugatuck Table with 5 Points to Warren Terrell

You're right. Here it is. Thanks for the return call.


-----Original Message-----
From: Ketcham, Judith [mailto:JKetcham@dufresne-henry.com]
Sent: Monday, June 07, 2004 12:59 PM
To: Lambalot, Robert
Subject: RE: Naugatuck Table with 5 Points to Warren Terrell


Bob

I got your email. Was there supposed to be an attachment with the
table?

If so, it was not attached.

Judy

-----Original Message-----
From: Lambalot, Robert [mailto:lambalre@usfilter.com]
Sent: Monday, June 07, 2004 12:20 PM
To: Ketcham, Judith
Subject: Naugatuck Table with 5 Points to Warren Terrell

Warren,

  Just got the 5th data set in. This is the updated summary.

Bob



| From: | Nadeau, Jessica |
| Sent: | Friday, June 11, 2004 1:35 PM |
| To: | Powell, Brad; Shafer, Dennis |
| Cc: | Recinos, Scott; MacRitchie, Dan |
| Subject: | FW: Naugatuck Acceptance Plans |

**Importance:** High

Attached are the latest versions of the Incinerator Acceptance Test Plan and the draft response letter to ARI'S comments.

I have also attached for your reference Connecticut DEP odor and noise regulations that need to be included in the appendices of the test plan. These are not the official versions, but ones that were downloaded from the web. Here are the links: http://www.dep.state.ct.us/air2/regs/noiseregs.pdf and http://www.dep.state.ct.us/air2/regs/mainregs/sec23.pdf

Also, the test plan references EPA testing methods 40 CFR part 60 appendix A to be included in the plan. Here is a useful link to this information: http://www.epa.gov/epahome/cfr40.htm

Please see the attached excel sheet for SCADA alarms and instruments.

Thanks,

Jessica Nadeau
Veolia Water North America
195 New Hampshire Ave, Suite 245
Portsmouth, NH 03801
Phone: 603-766-6750
Fax: 603-766-6751


-----Original Message-----
**From:** MacRitchie, Dan
**Sent:** Friday, June 11, 2004 10:46 AM
**To:** Nadeau, Jessica
**Subject:** FW: Naugatuck Acceptance Plans
**Importance:** High

Jessica -- attached are the latest files I have -- please check what you have and send Dennis/Brad cc. Scott and me the letter file and the plan file as well as anything you have worked on that will help to get this done.

<<...>> <<...>> <<...>> <<...>>    <<...>>

Dan MacRitchie, P.E.
Veo ia Water Systems
Tel. (603) 766-6753
Fax. (603) 766-6751
195 New Hampshire Avenue, Suite 245
Portsmouth, New Hampshire 03801
E-mail: daniel.macritchie@veoliawaterna.com


2/23/2006

Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.

-----Original Message-----
**From:** Powell, Brad
**Sent:** Friday, June 11, 2004 7:59 AM
**To:** Recinos, Scott; MacRitchie, Dan
**Cc:** Shafer, Dennis
**Subject:** RE: Naugatuck Acceptance Plans

Scott/Dennis,

Please forward latest stage Acceptance Plan for our review and completion.

NOTE! E-mail address changed effective Feb. 15, 2004
BL (Brad) Powell
Manager, Project Engineering
Veolia Water North America
Airside Business Park
250 Airside Drive
Moon Township, PA 15108
phone: 412/809-6522
fax: 412/809-6512
bradley.powell@veoliawaterna.com
www.usfilter.com

-

-----Original Message-----
**From:** Recinos, Scott
**Sent:** Friday, June 11, 2004 7:29 AM
**To:** Shafer, Dennis; MacRitchie, Dan
**Cc:** Powell, Brad
**Subject:** Naugatuck Acceptance Plans

Dennis/Dan

If possible, we would like to try to have the Acceptance testing plans for Naugatuck completed by next Wednesday so Dave Ford can present to the operations folks next Thursday when he visits the facility. Please let me know if this is doable.

Thanks

Scott Recinos, P.E.
Gaithersburg Regional Service Center Manager
NA Water Systems
400 Professional Drive, Suite 380
Gaithersburg, MD 20879
Direct Phone: (301) 840-6701 Facsimile: (301) 948-9258
Cell: (240) 401-3242

e-mail: scott.recinos@veoliawaterna.com

Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.



| From: | MacRitchie, Dan |
|---|---|
| Sent: | Wednesday, June 16, 2004 12:03 PM |
| To: | Shafer, Dennis |
| Cc: | Lundberg, Lee; Fry, Curtis; Lanser, Rodney; Powell, Brad; Nadeau, Jessica; Recinos, Scott; Steve Mallat (E-mail); David Ford (E-mail) |
| Subject: | RE: Acceptance Plan |

Importance: High

This looks good to me. Although, I note that the document does not assign responsibilities for each section of the plan. I propose that we leave the document as is with the understanding that Steve Mallat will be the Acceptance Test Manager, that Operations will run the plant during this period, and that Operations will support Steve Mallat in the implementation of the required tests.

Also, I need a completed letter to ARI responding to their comment letter – I had sent a draft of this to you with the draft plan. If you still have time to continue on this, I would appreciate it if you could finalize the draft letter as well.

We are on for a acceptance test start date of July 1, assuming work progresses in the field according to our current schedule.

Jessica -- please accept the changes in the attached document, make it pretty, and print it out for Dave Ford for his 6/17 meeting with Lavoie.

<<...>>

To Dennis, Lee and Brad -- thanks for pulling this together on such short notice.

Dan MacRitchie, P.E.
Veolia Water Systems
Tel. (603) 766-6753
Fax. (603) 766-6751
195 New Hampshire Avenue, Suite 245
Portsmouth, New Hampshire 03801
E-mail: daniel.macritchie@veoliawaterna.com

Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.

-----Original Message-----
From: Shafer, Dennis
Sent: Wednesday, June 16, 2004 11:23 AM
To: MacRitchie, Dan
Cc: Lundberg, Lee; Fry, Curtis; Lanser, Rodney; Powell, Brad; Nadeau, Jessica; Recinos, Scott
Subject: FW: Acceptance Plan

Dan,

Here is the plan with comments from Lee and I. It is still vague enough that Steve and crew have the liberty to conduct the testing as they best see fit. You may want to have Steve Maliat comment on the SCADA testing before passing on to Dave Ford. I did not receive comments from Rod.

I assume Jessica will clean the document up with any final changes from you.

Dennis

-----Original Message-----
**From:** Lundberg, Lee
**Sent:** Wednesday, June 16, 2004 10:25 AM
**To:** Shafer, Dennis
**Subject:** RE: Acceptance Plan

Dennis,

Attached is an updated file with the proper date on the various title pages and an updated footer on Page 1 of the text. I also made a couple minor changes in the incinerator section, so use this copy for adding Rod's comments if any to the document before forwarding to Dan. Please copy me on the transmittal to Dan.

## Lee A. Lundberg, P.E.
Director, Process Engineering
Capital Program Management
Veolia Water North America
Airside Business Park
250 Airside Drive
Moon Township, PA 15108

Direct:         412-809-6641
Facsimile:   412-809-6642
Cellular:       412-721-4040
E-Mail:        lee.lundberg@veoliawaterna.com
<www.veoliawaterna.com>
• • • **Please note my new e-mail address (as of 2/15/04)!** • • •

Confidentiality Note:   This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.

<< File: Naugatuck Incin Acceptance Test-Rev.1-June 2004-Redlined Comments.doc >>

-----Original Message-----
**From:** Shafer, Dennis
**Sent:** Wednesday, June 16, 2004 8:56 AM
**To:** Lundberg, Lee
**Cc:** Lanser, Rodney
**Subject:** RE: Acceptance Plan

Added SCADA language

Rod -> any comments

Let's review and then will send to Dan this morning

<< File: Naugatuck Incin Accept Comments Prelim Rev2.doc >>  << File: Incinerator SCADA.xls >>

-----Original Message-----
From:   Lundberg, Lee
Sent:   Tuesday, June 15, 2004 6:41 PM
To:     Shafer, Dennis
Subject:    RE: Acceptance Plan

Dennis,

Attached is a file with all of my revisions for your use. I did not take the time to accept all changes and re-read it for content. This should be done before we send out the formal revision to Dan/Dave/Whoever. I would suggest sending out the full red-lined copy and a conformed set with all changes accepted. I looked briefly at the SCADA section but think it needs more work. We can talk tomorrow.

Regards,

**Lee A. Lundberg, P.E.**
Director, Process Engineering
Capital Program Management
Veolia Water North America
Airside Business Park
250 Airside Drive
Moon Township, PA 15108

Direct:         412-809-6641
Facsimile:      412-809-6642
Cellular:       412-721-4040
E-Mail:         lee.lundberg@veoliawaterna.com
<<www.veoliawaterna.com>>
• • • Please note my new e-mail address (as of 2/15/04)! • • •

Confidentiality Note:   This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.

<< File: Naugatuck Incin Accept Comments Prelim Rev2.doc >>

-----Original Message-----
From:   Shafer, Dennis
Sent:   Monday, June 14, 2004 4:47 PM
To:     Lundberg, Lee
Subject:    Acceptance Plan

Lee,

Look at the stack section and the incinerator section. The other sections are as we discussed today. Edit as you see fit.

<< File: Naugatuck Incin Accept Comments Prelim Rev1.doc >>

I'll update the SCADA based on Rod's comments tomorrow.

**Dennis R. Shafer**
Project Engineer
Veolia Water North America
250 Airside Dr.
Moon Township, PA   15108
Tel:   (412) 809-6164
Fax:   (412) 809-6188
dennis.shafer@veoliawaterna.com
<<http://www.usfilter.com>>>

Confidentiality Note:  This e-mail message and any attachments to it are intended only for the named recipients and may contain legally privileged and/or confidential information.  If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.

–



From:    MacRitchie, Dan
Sent:    Thursday, June 17, 2004 10:14 AM
To:      Recinos, Scott
Subject: RE: Absolute Insulation

My cell phone is best -- 781 706 5940.

Dan MacRitchie, P.E.
Veolia Water Systems
Tel. (603) 766-6753
Fax. (603) 766-6751
195 New Hampshire Avenue, Suite 245
Portsmouth, New Hampshire 03801
E-mail: daniel.macritchie@veoliawaterna.com

Confidentiality Note:  This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information.  If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.

-----Original Message-----
From:  Recinos, Scott
Sent:  Wednesday, June 16, 2004 3:31 PM
To:    MacRitchie, Dan
Subject:    RE: Absolute Insulation

Sounds good. Where should I call you?

Scott

-----Original Message-----
From:   MacRitchie, Dan
Sent:   Wednesday, June 16, 2004 10:33 AM
To:     Recinos, Scott
Cc:     Ford, David
Subject:     RE: Absolute Insulation

How is 1:00 on Friday?

Dan MacRitchie, P.E.
Veolia Water Systems
Tel. (603) 766-6753
Fax. (603) 766-6751
195 New Hampshire Avenue, Suite 245
Portsmouth, New Hampshire 03801
E-mail: daniel.macritchie@veoliawaterna.com

Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.

-----Original Message-----
**From:** Recinos, Scott
**Sent:** Monday, June 14, 2004 9:23 PM
**To:** MacRitchie, Dan
**Cc:** Ford, David
**Subject:** RE: Absolute Insulation

Dan

Thanks for the input. If your available on Friday, lets discuss (let me know a time that is convenient for you). I would also like to schedule my long over due visit to your neck of the woods and Naugatuck. I'm thinking the 2nd or 3rd week in July (I'm in Paris next week and will be a "single dad" for the first 10 days in July or I'd be there sooner). Let me know your preference.

Dave-I'd like your input on visit schedule too as I hope we can use the opportunity to discuss other projects/opportunities/relationships, etc..

Thanks guys,

Scott

-

-----Original Message-----
**From:** MacRitchie, Dan
**Sent:** Monday, June 14, 2004 8:15 PM
**To:** Recinos, Scott
**Subject:** RE: Absolute Insulation

Scott, the two emails below sum up the situation and people's perspectives. It is a relatively small issue in my mind either way, but the Absolute Insulation guys appear to have some pull within our organization to get support for their claim. I'd be happy to run through this issue with you over the telephone.

<< Message: RE: Naugatuck Project- Absolute Insulation >>  << Message: RE: Naugatuck Project- Absolute Insulation >>

Dan MacRitchie, P.E.
Veolia Water Systems
Tel. (603) 766-6753
Fax. (603) 766-6751
195 New Hampshire Avenue, Suite 245
Portsmouth, New Hampshire 03801
E-mail: daniel.macritchie@veoliawaterna.com

Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.

-----Original Message-----
**From:** Recinos, Scott
**Sent:** Saturday, June 12, 2004 7:31 AM
**To:** MacRitchie, Dan
**Subject:** RE: Absolute Insulation

Dan

What's the status of the construction issue at the plant that jerry/greg were trying to get addressed relative to the sub's claim you have heartburn over? Please advise.

Thanks

Scott

-----Original Message-----
**From:** Mracna, Joseph
**Sent:** Thursday, June 03, 2004 3:02 PM
**To:** MacRitchie, Dan; Obniski, Marc; Moser, Jackie
**Cc:** Stroud, Dave; Recinos, Scott
**Subject:** RE: Absolute Insulation

Dan - this is your call, but either way you should answer their claim formally. If Absolute feels that your decision is unfair have them appeal it up the chain of command.

**Please note change in e-mail address effective February 16, 2004**
*Joe Mracna*
*Vice President - Project Services*
*Veolia Water North America*
*Airside Business Park*
*250 Airside Drive*
*Moon Township, PA 15108*
*Office Phone.  412-809-6114*
*Office Fax:    412-809-6111*
*Cell Phone:    724-902-6662*
*E-Mail:        joseph.mracna@veoliawaterna.com*
*www.usfilter.com*
**Confidentiality Note:** This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message, and immediately delete it from your computer.

-----Original Message-----

From: MacRitchie, Dan
Sent: Thursday, June 03, 2004 6:50 AM
To: Mracna, Joseph; Obniski, Marc; Moser, Jackie
Cc: Stroud, Dave; Recinos, Scott
Subject: RE: Absolute Insulation

Joe --

I have been preoccupied with start-up activities and have not finalized this matter. The latest was that in fact Absolute insulation has admitted that they claimed double the cost for the scaffolding as was actually incurred. As I think everyone has gathered by now, I do not feel that either claim is legitimate. Although I know that others disagree. If someone above me tells me to process this claim, I will do so, but I am not comfortable approving it without some direction.

Dan MacRitchie, P.E.
Veolia Water Systems
Tel. (603) 766-6753
Fax. (603) 766-6751
195 New Hampshire Avenue, Suite 245
Portsmouth, New Hampshire 03801
E-mail: daniel.macritchie@veoliawaterna.com


Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.

-----Original Message-----
From: Mracna, Joseph
Sent: Wednesday, June 02, 2004 5:35 PM
To: Obniski, Marc; Moser, Jackie
Cc: Stroud, Dave; MacRitchie, Dan
Subject: RE: Absolute Insulation

I would expect that Dan is probably in a better position to answer this than Jackie.

Please note change in e-mail address effective February 16, 2004
Joe Mracna
Vice President - Project Services
Veolia Water North America
Airside Business Park
250 Airside Drive
Moon Township, PA 15108
Office Phone: 412-809-6114
Office Fax: 412-809-6111

*Cell Phone:*    *724-902-6662*
*E-Mail:*    *joseph.mracna@veoliawaterna.com*
*www.usfilter.com*

**Confidentiality Note:** This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message, and immediately delete it from your computer.

-----Original Message-----
**From:** Obniski, Marc
**Sent:** Wednesday, June 02, 2004 2:59 PM
**To:** Moser, Jackie
**Cc:** Mracna, Joseph; Stroud, Dave; MacRitchie, Dan
**Subject:** Absolute Insulation

What is the status of the out standing delay and scaffolding change. They are having a problem with the insulation we speced at Naugatuck and the Jerry Grubesky and Gary Cooper requested Absolute go up to Naugatuck to help them evaluate the problem and correct the problem.

Marc Obniski
Senior Estimator
Veolia Water North America
Airside Business Park
250 Airside Drive
Moon Township, PA 15108
Tel: (412)-809-6180
Fax: (412)-809-6512
E-Mail:marc.obniski@veoliawaterna.com
**Confidentiality Note:** This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.

From:    MacRitchie, Dan
Sent:    Thursday, June 17, 2004 10:16 AM
To:      Recinos, Scott
Subject: FW: NAUGATUCK - ABSOLUTE INSULATION - 7012-01-052

fyi

Dan MacRitchie, P.E.
Veolia Water Systems
Tel. (603) 766-6753
Fax. (603) 766-6751
195 New Hampshire Avenue, Suite 245
Portsmouth, New Hampshire 03801
E-mail: daniel.macritchie@veoliawaterna.com

Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.

-----Original Message-----
From:    Mracna, Joseph
Sent:    Wednesday, June 16, 2004 3:25 PM
To:      Stroud, Dave; Moser, Jackie; Obniski, Marc
Cc:      MacRitchie, Dan
Subject: RE: NAUGATUCK - ABSOLUTE INSULATION - 7012-01-052

This is fine with me.

Please note change in e-mail address effective February 16, 2004
Joe Mracna
Vice President - Project Services
Veolia Water North America
Airside Business Park
250 Airside Drive
Moon Township, PA 15108
Office Phone:   412-809-6114
Office Fax:     412-809-6111
Cell Phone:     724-902-6662
E-Mail:         joseph.mracna@veoliawaterna.com
www.usfilter.com

Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message, and immediately delete it from your computer.

-----Original Message-----

**From:** Stroud, Dave
**Sent:** Wednesday, June 16, 2004 1:22 PM
**To:** Moser, Jackie; Obniski, Marc; Mracna, Joseph
**Cc:** MacRitchie, Dan
**Subject:** RE: NAUGATUCK - ABSOLUTE INSULATION - 7012-01-052

We were going to wait until Dan MacRitchie got back from his "personal leave" and do a concall (Mracna, Obniski, MacRitchie, me) to see if we can agree internally what Absolute is entitled to. Then, assuming Dan is satisfied that he has everything we need to make a decision and calculate an amount, he will write a definitive response.

From this far away, the stories are too different to evaluate fairly, and Absolute says they have had no luck getting in touch with Dan.

Is Dan back?

# Dave Stroud

David G. Stroud, Esq.
Contract Manager
**N.A. Water Systems**
250 Airside Drive
Moon Township, PA 15108-2793
(412) 809-6183   FAX (412) 809-6188

Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain attorney-client privileged communication or other confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message, and immediately delete it from your computer.

-----Original Message-----
**From:** Moser, Jackie
**Sent:** Wednesday, June 16, 2004 1:16 PM
**To:** Stroud, Dave; Obniski, Marc; Mracna, Joseph
**Subject:** NAUGATUCK - ABSOLUTE INSULATION - 7012-01-052

I have no idea where we are on this. Sometimes I am kept in the loop, sometimes not. Anyway, I received a letter from Absolute attaching some credit invoices for scaffolding, and an invoice for extra cost of labor due to late start.

Question: who is spearheading this now, who should get copy of this letter?

Jacquelyn Moser
Project Services Specialist
Veolia Water North America
Airside Business Park
250 Airside Drive
Moon Township, PA 15108-2793
Phone: 412.809.6174
Fax: 412.809.6512
jacquelyn.moser@veoliawaterna.com <mailto:jacquelyn.moser@veoliawaterna.com>
www.veoliawaterna.com <http://www.veoliawaterna.com>

Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from your computer.